## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Aqua EZ, Inc.,

                  Plaintiff,

                           Case No. 1:23-cv-790-MLB

v.

Resh, Inc.,

                  Defendant.

_____/

## **OPINION & ORDER**

This is a patent case. Aqua EZ, Inc. seeks a declaration that its product (a pole for cleaning swimming pools) does not infringe any valid patents owned by Resh, Inc. (Dkt. 1.) Resh counterclaims, saying Aqua EZ and its customer, Lowe's Companies, Inc., have infringed and continue to infringe two of Resh's patents. (Dkt. 22.) Aqua EZ and Lowe's move to strike large portions of Resh's counterclaims. (Dkts. 25; 29.) Lowe's moves to sever and stay Resh's counterclaims against it. (Dkt. 30.) Resh moves to add a Lowe's subsidiary (Lowe's Home Centers) as a party. (Dkt. 37.) Finally, Resh moves to stay the entire case. (Dkt. 39.)

## I.     Background

For many years, Aqua EZ manufactured and sold a telescoping aluminum pole to be used in cleaning pools. (Dkt. 1 ¶ 23.) At some point, Resh applied for a patent for its own pool pole. (Dkt. 1 ¶ 20.) While Resh's patent application was pending, Resh threatened to sue Aqua EZ for patent infringement based on Aqua EZ's sale of its product. (Dkt. 1 ¶¶ 8, 11, 21.) In October 2021, the United States Patent and Trademark Office ("USPTO") granted Resh's application and issued U.S. Patent number 11,141,852 ("the '852 patent"). (Dkt. 1 ¶¶ 10–11.) Resh continued threatening to sue Aqua EZ for patent infringement. (Dkt. 1 ¶¶ 11–13.)

Aqua EZ sued Resh in February 2023, asking the Court to declare that each claim of Resh's '852 patent is invalid and that Aqua EZ has not infringed any valid claim of the '852 patent. (Dkt. 1 ¶¶ 31–37.) In April 2023, Resh obtain U.S. patent number 11,628,554 ("the '554 patent") for a different pool pole. (Dkt. 22 ¶ 14.) Resh thus filed counterclaims against Aqua EZ and Lowe's, claiming Aqua EZ's pool pole infringes both the '852 and the '554 patents. (Dkt. 22.)

## II.    Discussion

### A.    Aqua EZ's and Lowe's Motions to Strike

Aqua EZ and Lowe's move to strike several paragraphs from Resh's counterclaims.  (Dkts. 25; 29.)  They say "the vast majority" of Resh's counterclaims constitute:

> irrelevant surplusage and grossly excessive allegations of fact and law, . . . extensive arguments and proposed statutory interpretation, . . . excessive and irrelevant alleged details about various prior art products, . . . excessive, irrelevant, and largely inadmissible alleged details and evidence regarding the parties and their counsel's communications prior to this action, . . . excessive and irrelevant alleged details and evidence related to a different case that does not involve Aqua EZ or [Lowe's], . . . irrelevant allegations of statements made by various individuals not associated with Aqua EZ or [Lowe's], . . . excessive, confusing, and largely irrelevant allegations about the file histories of the asserted patents, . . . [and] two prayers for relief for anticipated evidentiary rulings regarding "corroboration" of anticipated prior art evidence.

(Dkt. 25-1 at 3–4.)[1]  According to Aqua EZ and Lowe's, this means Resh's counterclaims violate Rule 8 of the Federal Rules of Civil Procedure and "appear[] to be a deliberate tactic employed by Resh to impose

---

[1] Lowe's merely "joins" Aqua EZ's motion to strike, "relies upon the memorandum of law filed by Aqua EZ, and incorporates said memorandum by reference herein."  (Dkt. 29 at 1–2.)  Accordingly, the Court cites only Aqua EZ's motion in describing the parties' arguments.

unnecessary burden on" them.  (Dkt. 25-1 at 4.)  They point to another pending case by Resh against a different alleged infringer in which the United States District Court for the Northern District of California (the "California case") struck over 60 pages and 83 paragraphs of a similar complaint.  (Dkt. 25-1 at 4.)  Resh says the complexity and length of the parties' dispute "explain the need for Resh's detailed counterclaims." (Dkt. 27-1 at 3.)  It also provides a table of identical allegations from the California case that the court did not strike and which Resh used as a "template" for its counterclaims in this case.  (Dkt. 27-1 at 6–8.)

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "It is well established that the pleading standard of Federal Rule of Civil Procedure 8(a) does not permit pleadings that, because of their lack of intelligibility, make it unreasonably difficult to evaluate or respond to the pleader's claims."  *Jones Creek Investors, LLC v. Columbia Cty., Ga.*, 2011 WL 7446782, at *2 (S.D. Ga. Dec. 9, 2011) (citing *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011)).  Courts may dismiss or strike portions of pleadings that are excessively long and burdensome,

4

needlessly repetitive, or contain allegations that constitute mere legal argument. *See Taylor v. Bd. of Regents of Univ. Sys. of Ga.*, 2021 WL 5851005, at \*5–\*6 (N.D. Ga. Dec. 9, 2021).

The Court will address in turn each of Aqua EZ and Lowe's complaints about several specific portions of Resh's counterclaim.

(1)   <u>Paragraphs 18–38 "contain extensive allegations about various alleged prior art swimming pool poles, much or all of which is entirely irrelevant to the issues in this case." (Dkt. 25-1 at 8–9.)</u>

Resh responds that these allegations show, among other things, "Aqua EZ prior art products, underscoring that Aqua EZ is willfully infringing by moving instead to copy Resh's patented inventions." (Dkt. 27-1 at 7.) The Court disagrees. The existence of other, unrelated prior art has no relevance to the question of whether Aqua EZ and Lowe's infringed *Resh's* patent. All these allegations show is that there are some prior art products (both Aqua EZ's and other brands') that purportedly use different mechanisms than Resh's poles and Aqua EZ's accused pole. To the extent Resh suggests the existence of this prior art speaks to Aqua EZ's motivation for allegedly infringing Resh's patents, Paragraphs 18–38 do not establish that. It appears Resh—as Aqua EZ suggests—is trying to "move [Local Patent Rules] disclosures," which have detailed

requirements related to prior art and invalidity, "into the pleading stage." (Dkt. 25-1 at 8.)  The Court will not require Aqua EZ and Lowe's to provide detailed positions about this prior art before the time for disclosure required by the Court's Local Patent Rules.  *See* LPR 4.3, 4.4, NDGa.  The Court strikes Paragraphs 18–38 of the Amended Counterclaims.

(2)  <u>Paragraphs 39–45 "contain lengthy allegations about the alleged benefits of Resh's alleged inventions, which again, is excessive in nature, unnecessary in the Amended Counterclaims, and largely if not entirely irrelevant."  (Dkt. 25-1 at 8.)</u>

In response to this complaint, Resh points to the California case, in which the court did not strike "virtually verbatim" allegations, thereby "implicitly rul[ing]" those allegations do not violate Rules 8 or 12.  (Dkt. 27-1 at 8–9 (emphasis omitted).)  But it's unclear whether the defendant in the California case even challenged the purportedly similar allegations.  Neither party answers that question, and the Court declines to do their work for them.  In any event, the Court concludes these allegations are appropriate.  Paragraphs 39–45 broadly discuss Mr. Resh's background, his development of the patents-in-suit, and the patents' alleged benefits and improvements upon prior swimming pool

poles.  (Dkt. 22 ¶¶ 39–45.)  While at times the allegations may border on exaggeration (for example, describing that another alleged infringer "gasped when he first saw Resh's pole inventions," which Resh claims have "tremendous advantages"), these allegations are relevant to Aqua EZ's purported willful intent to infringe Resh's patents.

Aqua EZ contends that responding to these allegations will require it to "expend unnecessary effort at the pleading stage" to "crystalize which claims and what claim terms are really at issue and therefore what alleged 'benefits,' if any, are actually relevant." (Dkt. 25-1 8.)  The Court does not see why Aqua EZ and Lowe's would have to respond in such detail.  Paragraphs 39–45 merely describe features of the subject patented poles, and some offer subjective opinions about their purported advantages.  Aqua EZ and Lowe's should easily be able to respond whether they admit those allegations, deny them, or lack the knowledge to respond.  Indeed, several of these allegations appear to merely describe the patents-in-suit.  Aqua EZ and Lowe's can simply deny anything inconsistent with those patents.  The Court declines to strike Paragraphs 39–45 of the Amended Counterclaims.

(3)    <u>Paragraphs 63–70 "contain extensive purported explanations of the alleged law regarding recovery of</u>

pre-issuance damages, willfulness, and enhanced damages," which are "akin to a brief" rather than a pleading. (Dkt. 25-1 at 8–9.)

The Court agrees with Aqua EZ and Lowe's. Paragraphs 63–70 contain nothing but pure recitation of legal rules and related argument, to which Aqua EZ and Lowe's should not have to respond at the pleading stage. The Court strikes Paragraphs 63–70 of the Amended Counterclaims.

    (4)   Paragraphs 76–84 "contain lengthy and extensively detailed allegations regarding the prior events in the life of Mr. Resh (the alleged inventor of the patents-in-suit) and allegations of Aqua EZ's conduct long before the patents at suit issued, which are not relevant to the disputed issues in this case." (Dkt. 25-1 at 9.)

Paragraphs 76–78 discuss a leaf rake Mr. Resh invented in 1995, how his invention was "a threat to companies like Aqua EZ and [Lowe's]," and how his patent for the rake was set to expire in 2014, motivating him to develop the pool poles at issue in this case. Those allegations have nothing to do with Resh's infringement claims. Mr. Resh's motivation for developing his pool poles does not speak to whether Aqua EZ and Lowe's willfully infringed the patents at issue. On the other hand, Paragraphs 79–84 discuss the timing of Resh's efforts to obtain patent protection for the pool poles, alleging that it was only after Resh introduced these poles

publicly that Aqua EZ and Lowe's "began copying" the inventions. Regardless of whether the patents did not actually issue until later, these allegations speak to Aqua EZ's and Lowe's willfulness, and so are appropriate as part of Resh's counterclaims.   The Court strikes Paragraphs 76–78, but declines to strike Paragraphs 79–84.

> (5)   <u>Paragraphs 85–99 "contain what is essentially a brief arguing that one of the claims in the '852 patent is allegedly 'substantially identical' to a claim in an earlier Resh patent, . . . [and] lengthy and largely irrelevant arguments regarding the file history."</u>  (Dkt 25-1 at 9.)

Paragraphs 85–89 describe Resh's first pole patent application in 2012, supposedly to show that since then, "Resh has always sought patent protection for a 'non-water barrier version' of Resh's pole inventions," that such efforts "predated any level lock pole designs made by Aqua EZ and Lowe's," and that "Resh has not 'modified' [its original] claim in order to cover later Aqua EZ and [Lowe's] pole products."  (Dkt. 22 ¶¶ 86–88.)   They also attempt to explain why the patents that ultimately issued were worded or numbered differently from the 2012 application.  (Dkt. 22 ¶ 89.)  These allegations again speak to Aqua EZ's and Lowe's willfulness and are proper at the pleading stage.  To the extent any of these paragraphs contain legal conclusions, Aqua EZ and

Lowe's can simply assert as much while denying (or admitting) the remaining allegations in each of the paragraphs.

Paragraphs 90–99 are different.  They lay out allegedly applicable law and provide legal argument regarding the facts at hand. Astoundingly, Resh includes within the counterclaims several pages of its original patent application, the '852 patent as issued, and comments from the patent examiner, asking Aqua EZ and Lowe's to stake a position on whether these pages show that the original application is "substantially identical" to the issued patent—a pure question of law. (Dkt. 22 ¶¶ 93–98.)  To respond to these allegations, Aqua EZ and Lowe's would thus have to engage in legal argument much more akin to briefing than a response to a pleading.  The Court will not require Aqua EZ and Lowe's to do that and strikes Paragraphs 90–99, but declines to strike Paragraphs 85–89.

> (6)  Paragraphs 100–123 "contain[] excessive citations to caselaw and argument, again representing an attempt to include arguments akin to a brief, much of which i[s] redundant to what was previously pleaded," and "recite extensive allegations regarding prior communications between the parties, much if not all of which is irrelevant, at least some of which is inadmissible under Rule 408, and which certainly are not relevant in the level of detail alleged."  (Dkt. 25-1 at 9–10.)

Paragraphs 100–104 discuss Mr. Resh's purported conversations at a trade show with a representative from Aqua EZ, in which Mr. Resh allegedly advised Aqua EZ that it had copied his patent-pending pole inventions. (Dkt. 22 ¶¶ 100–104.) These paragraphs are plainly relevant to the question of Aqua EZ's alleged willfulness. They are not argumentative and have nothing to do with any potential settlement discussions. So, the Court declines to strike them.

Paragraphs 105–114 and 116–118 discuss early communications between the parties in which they discuss: Resh's patent application; initial efforts to determine (and argue about) whether Aqua EZ potentially copied Resh's designs; whether Lowe's ordered infringing pool poles from Aqua EZ; and efforts by Aqua EZ to have Resh retract its assertions to Lowe's about Aqua EZ's potential infringement. (Dkt. 22 ¶¶ 105–115, 116–118.) Aqua EZ suggests these communications are protected by Rule 408 of the Federal Rules of Evidence, and that because evidence of these communications is inadmissible, it should not have to respond to allegations about them. But it is not obvious to the Court these communications fall within the scope of Rule 408—Aqua EZ does not do nearly enough to convince the Court they should be considered

discussions or negotiations about settlement.  Rather, they seem to be merely preliminary discussions between the parties about whether there was an actionable patent at all and, if so, whether Aqua EZ (and Lowe's) infringed it.  And in any event, Aqua EZ points the Court to no authority suggesting that just because an allegation might involve inadmissible evidence, that allegation should be stricken.  Particularly where, like here, the allegations are directly relevant to Resh's allegations of willfulness.  The Court sees no reason Aqua EZ and Lowe's cannot respond to these paragraphs and declines to strike them.

Paragraphs 122 and 123 are allegations that Lowe's sold certain infringing poles from Aqua EZ on its website and directly in-store to Mr. Resh.  (Dkt. 22 ¶¶ 122–123.)  While they also affirmatively claim these poles are "infringing," Aqua EZ and Lowe's can simply decline to respond to Resh's legal conclusion regarding the poles while admitting or denying the factual substance of whether Lowe's sold the poles Resh identifies at the time it claims.

Finally, Paragraphs 115, 119, and 120–121 are mere legal conclusions.  They point to the parties' pre-litigation communications and the chronology of those communications to assert in conclusory fashion

that Aqua EZ and Lowe's acted willfully.  For the same reasons as above, the Court will not require Aqua EZ and Lowe's to respond to those allegations.

In sum, the Court strikes Paragraphs 115, 119, and 120–121, but declines to strike Paragraphs 100–104, 105–114, 116–118, and 122–123.

(7)    <u>Paragraphs 124–129 "recite extensive alleged excerpts of, and alleged facts related to, the prosecution histories of the patents and related patents, which are confusing, appear to be irrelevant and in any event, improper at the pleading stage." (Dkt. 25-1 at 10.)</u>

In response, Resh says Aqua EZ also includes in its complaint "various details regarding the prosecution/file history of Resh's '852/'554 patents." (Dkt. 27-1 at 9.)  According to Resh, it similarly included details about the prosecution and file histories of the patents to respond to Aqua EZ's allegations.  (*Id.*)  The Court sees no issue with Resh's description in Paragraphs 124–126 and 129 of prior pool pole patents he received (not at issue in this case) and how he decided to ultimately seek additional patent protection to cover more than the prior patent.  (Dkt. 22 ¶¶ 124–126, 129.)  Nor does it have a problem with Paragraph 127, which merely includes an excerpt from a patent office application publication related to the '852 patent (because, again, Aqua EZ and Lowe's can deny any

allegations inconsistent with the excerpt).  (Dkt. 22 ¶ 127.)  Paragraph 128, however, asserts basically the same legal conclusions as Paragraphs 90–99 regarding other patents.  That is, it asks Aqua EZ and Lowe's to prematurely take a legal position on whether different patent claims are "substantially identical."  (*Id.*)  Again, the Court will not require Aqua EZ and Lowe's to do that.  So, it strikes Paragraph 128, but declines to strike Paragraphs 124–127 and 129.

> (8)  <u>Paragraphs 130–134 "recite alleged anecdotal 'admissions' and other statements from non-party individuals and companies, who are also unrelated to any parties in this case," and are "excessively detailed with no apparent purpose."  (Dkt. 25-1 at 10.)</u>

Paragraphs 130–134 involve allegations about and purported statements from non-parties related to the supposed benefits of Resh's pole design.  Resh does not tie any of this back to Aqua EZ or Lowe's other than to say that problems with other pool poles "exist[] with Aqua EZ and [Lowe's] prior art poles, and is at least one reason that Aqua EZ and [Lowe's] . . . have continued to willfully infringe Resh's patent rights."  (Dkt. 22 ¶ 132.)  This purported connection is far too tenuous to make any of these allegations even remotely relevant to this litigation.  The Court can see no reason at all how any of these claims have anything to

do with this case.  So, the Court strikes Paragraphs 130–134.

    (9)   <u>Paragraphs 135–156 "provide extensive and detailed recitations of alleged excerpts between some of the Parties' and their respective counsel's pre-litigation discussions and negotiations (much of which was subject to [R]ule 408 and is entirely inadmissible) and which is in any event irrelevant."  (Dkt. 25-1 at 10.)</u>

To start, Paragraphs 135–137 do not involve any pre-litigation discussions and thus do not really fit within Aqua EZ and Lowe's complaint about these allegations.  Paragraphs 138–146 and 150–156, however, involve extensive and detailed allegations regarding pre-suit communications between the parties' counsel, including discussions about "settlement negotiations" and "the opportunity to avoid litigation." (Dkt. 22 ¶ 139.)  The Court concludes they are redundant, repetitive, and largely irrelevant.  The parties' respective positions on settlement have nothing to do with the substance of Resh's infringement claims.  And to the extent Resh suggests these allegations speak to Aqua EZ and Lowe's willfulness, the counterclaims concede the parties had "extensive previous communications about these issues."  (Dkt. 22 ¶ 141.)  So, if anything, these allegations are cumulative of the several other paragraphs Resh dedicates to proving intent.

Similarly, Paragraphs 147–48 have nothing to do with this case. They involve allegations about what happened between Resh and a non-party alleged infringer "while Resh was still awaiting further response from Aqua EZ and/or [Lowe's] regarding the upcoming issuance of Resh's '852 patent." (Dkt. 22 ¶ 148.)  They are totally irrelevant.

The Court strikes Paragraphs 138–156, but declines to strike Paragraphs 135–137.

(10)  Paragraphs 157–160 "contain detailed allegations regarding communications and a separate civil action between Resh and a company unrelated to Aqua EZ or [Lowe's], and although the civil action involves the same patents at issue in the present case, the allegations of fact contained in these paragraphs are entirely irrelevant." (Dkt. 25-1 at 11.)

Paragraphs 157–160 reference a non-party company (involved in the California case) in response to Aqua EZ's allegations that the company identified to Resh a prior art pole that "invalidates all claims of the '852 patent." (Dkt. 1 ¶ 26.)  Resh describes in Paragraphs 157–160 its efforts to corroborate with the non-party—including through litigation—its claim that there exists prior art that invalidates its patents.  While this information may be relevant to Resh's defenses to Aqua EZ's attempts to invalidate its patents, it is not clear to the Court

how these allegations have anything to do with Resh's *infringement* claims. The Court strikes Paragraphs 157–160.

> (11) <u>Paragraphs 161–172 "contain irrelevant allegations regarding Resh's view of alleged evidence in another case, irrelevant allegations about why Resh believed it was appropriate to reach out to Aqua EZ 'again,' more alleged extensive file history excerpts, more allegations regarding communications between counsel (which include some entirely inadmissible Rule 408 discussion) and other irrelevant factual allegations." (Dkt. 25-1 at 11.)</u>

Paragraphs 161–172 deal with Resh's purported communications with Aqua EZ regarding additional patent protection Resh sought and received in March 2023. (Dkt. 22 ¶¶ 161–172.) Resh claims this additional protection covers Aqua EZ and Lowe's accused poles. (Dkt. 22 ¶ 164.) These allegations primarily involve Resh's renewed communications with Aqua EZ based on these new developments, and focus on potential litigation and settlement related to Aqua EZ's purported infringement. (Dkt. 22 ¶¶ 161–172.) Like before, the Court concludes none of these allegations are relevant to Resh's infringement claim. And even if they were, they are repetitive and cumulative of Resh's other factual allegations regarding Aqua EZ's alleged willfulness. The Court strikes Paragraphs 161–172.

(12)  Prayer for relief Paragraphs K and L inappropriately
"seek[] a declaratory judgment with respect to an
apparently anticipated evidentiary ruling regarding
corroboration of anticipated prior art evidence."  (Dkt.
25-1 at 11.)

Paragraphs K and L of Resh's prayer for relief ask the Court for a
judgment declaring that Aqua EZ and Lowe's have not sufficiently
corroborated two different poles from non-party companies as prior art.
(Dkt. 22 at 145–146.)  Aqua EZ and Lowe's say "[t]he Court will be
allowed to rule on corroboration of evidence at the appropriate times, . . .
[h]owever, requesting declaratory judgment with respect to such rulings
is inappropriate."  (Dkt. 25-1 at 11.)  The Court agrees.  Whether Aqua
EZ and Lowe's can corroborate prior art evidence is a factual issue (that
will ultimately impact Aqua EZ's claim that Resh's patents are invalid)
that the Court will address at a later stage of the litigation.  It is not a
legal question for declaratory judgment.  *See Medmarc Casualty Ins. Co.
v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1215 (S.D. Fla. 2011) ("[A]
declaratory judgment serves to clarify the legal  relations and is not for
the purpose of making factual determinations.").  So, the Court strikes
Paragraphs K and L of the prayer for relief.

18

## B.   Lowe's Motion to Sever and Stay

Lowe's moves to sever and stay Resh's counterclaims against it. (Dkt. 30.)  It says the "customer suit doctrine" warrants staying Resh's claims against it while allowing Resh's claims against Aqua EZ to proceed because the resolution of the case against Aqua EZ will streamline (and perhaps moot) the issues in Resh's case against Lowe's.  (*Id.*)  Resh opposes, saying the customer suit doctrine applies only when there are two competing lawsuits, not where—as here—there is only one action. (Dkt. 34-1.)

Rule 21 of the Federal Rules of Civil Procedure allows a court to sever any claim against a party and proceed with that claim separately. Fed. R. Civ. P. 21.  And district courts have "broad discretion" to sever and "stay proceedings as an incident to [their] power to control [their] own docket[s]." *Clinton v. Jones*, 520 U.S. 681, 683 (1997).  In patent cases, motions to sever are governed by Federal Circuit law.  *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).  That law provides—under the so-called "customer suit doctrine"—that district courts have discretion to stay patent infringement suits against customers of alleged manufacturers of accused products when there is another pending suit

against the manufacturer. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The doctrine is also applicable where the manufacturer and customer are sued in the same action. In that scenario, the court may sever and stay the claims against the customer pending resolution of the claims against the manufacturer. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014). The doctrine "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* at 1365 (citation omitted). "The guiding principles" of the doctrine "are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

The customer suit doctrine favors Lowe's. As the alleged infringer, Aqua EZ is the real party in interest, as it faces greater risk of damages, indemnification duties, and reputational interests. And resolving Resh's claims against Aqua EZ will streamline—or perhaps even moot—its claims against Lowe's. The Court will decide several issues as part of Resh's case against Aqua EZ that will directly impact any claims against Lowe's, including whether Resh's patents are valid and whether Aqua EZ

infringed those patents. Even if there are some issues that might conceivably come up that are unique to Lowe's (such as damages), those few issues can be dealt with later in a more efficient way. *See Nintendo*, 756 F.3d at 1366 ("'[A]lthough there may be additional issues involving the defendants in [the customer] action, their prosecution will be advanced if [the patent owner] is successful on the major premises being litigated in [the manufacturer litigation], and may well be mooted if [the patent owner] is unsuccessful.'") (citation omitted). So, contrary to Resh's argument, it will not have to "relitigate" critical issues against Lowe's. If anything, allowing the claims against both Aqua EZ and Lowe's to proceed in tandem might very well waste the parties' and the Court's resources. For example, if the Court concludes Aqua EZ did not infringe Resh's patents, requiring Lowe's to participate in discovery and other pre-trial matters will ultimately prove worthless.

In arguing otherwise, Resh says the customer suit doctrine applies only when there are two separate cases: one against the manufacturer and another against the customer. (Dkt. 34-1 at 5.) It offers no authority in support, instead saying only that *Nintendo* is inapposite. But Resh doesn't actually explain how *Nintendo* would not apply here. Instead, it

merely copies and pastes large blocks of text from an email it sent Lowe's before Lowe's filed its motion to sever and stay, in which Resh says (again, without explanation) that "excerpts from that decision indicate that the present situation is readily distinguished." (Dkt. 34-1 at 8.) It is not obvious to the Court from the many, long excerpts Resh quoted in that email how *Nintendo* is materially different from this case. Resh just says the Court should find from this copy-and-paste job that "factual distinctions" render *Nintendo* inapposite. The Court, however, refuses to do Resh's work for it by trying to parse some explanation Resh could not be bothered to offer. In *Nintendo*, the patent owner sued the manufacturer and its customers in the same suit. The Federal Circuit—on mandamus—ordered the district court to stay the claims against the customer and sever and transfer the claims against the manufacturer. 756 F.3d at 1366. It explained that "[s]ince [the manufacturer's] liability is predicate to recovery from any of the defendants, the case against [the manufacturer] must proceed first, in any forum." *Id.* *Nintendo* thus stands for the precise propositions for which Lowe's cites it: the customer suit doctrine can apply in one case against both a customer and a manufacturer, and that the Court should sever and stay the claims

against Lowe's pending resolution of the suit against Aqua EZ.

The only other case Resh addresses head-on is *Koh v. Microtek Int'l, Inc.*, in which a district court severed and stayed the patent owner's claims against the customer of the alleged infringing manufacturer (both of whom were sued in the same action). *See* 250 F. Supp. 2d 627, 631–33 (E.D. Va. 2003). Resh says *Koh* is inapposite because the court in that case also had to decide whether to transfer the case against the manufacturer to a purportedly more convenient forum. (Dkt. 34-1 at 11.) But the *Koh* court's decision to sever and stay the case against the customer was not impacted in any way by its separate decision to transfer the claims against the manufacturer. Indeed, in *Koh*, the court explained that it was "consider[ing] the transfer of the claims against the [manufacturer], having in mind severance and stay of the claims against [the customer]." 250 F. Supp. 2d at 633. As to whether to sever and stay the customer claims, the court made clear that because those claims "are only peripherally related to the claims against [the manufacturer]," and "resolution of the claims against [the manufacturer] will completely dispose of the claims against [the customer]," severance and stay were appropriate. *Id.* at 631–32.

23

What's more, Lowe's cites several other cases in which courts have severed and stayed claims against a customer sued in the same case as a manufacturer.  (Dkts. 30 at 6–7; 35 at 3–5.)  Likewise, the Court sees no good reason why the doctrine would not apply equally to one case that joins the manufacturer and the customer.  After all, the Court has the inherent authority to sever (or even dismiss) a party without dismissing the whole case.  So, doing that in this case—in which adjudication of the claims against Aqua EZ would undoubtedly streamline the disposition of the claims against Lowe's—would merely add one procedural step that is entirely consistent with the customer suit doctrine.  The Court grants Lowe's motion to sever and stay Resh's counterclaims against it.  (Dkt. 30.)

## C.   Resh's Motion to Add Lowe's Home Centers

Lowe's stated at a scheduling conference that Resh should not have brought counterclaims against it because it is not the entity that operates Lowe's stores or the Lowe's website (where Lowe's purportedly sells the accused pool poles).  (8/23/2023 Tr. at 11.)  According to Lowe's, the proper party for Resh's counterclaims is its subsidiary, Lowe's Home Centers ("LHC").  (*Id.*)  Lowe's consented to allowing Resh to amend its

counterclaims to bring them against LHC, if Resh dropped Lowe's from the case. (8/23/2023 Tr. at 11–15.) Resh seemingly agreed with this arrangement at the scheduling conference, so long as Lowe's provided it "evidence" that LHC, rather than Lowe's, is the proper party. (8/23/2023 Tr. at 15.) Lowe's apparently provided Resh a sworn declaration saying as much. (Dkt. 46 at 3.)[2] Now, however, Resh moves to add LHC but does not consent to dismissing Lowe's because Lowe's purportedly has not "produced sufficient evidence to support [its] assertion" that it is an improper counterdefendant. (Dkt. 37-1 at 2.)

Resh wants its cake and to eat it, too. On the one hand, it seeks to hold Lowe's to its concession that LHC is a proper party. On the other, it refuses to dismiss Lowe's because it is not satisfied with Lowe's representation that it does not run Lowe's stores or the Lowe's website. But Resh cannot decide to believe Lowe's when it benefits Resh, then claim Lowe's word is not enough when it would result in dismissal of Lowe's as a party. The Court, like Lowe's, "believed that a resolution had

---

[2] Lowe's did not attach this declaration to its response to Resh's motion, instead representing in its brief that it gave the declaration to Resh. Resh does not dispute this fact, however, so the Court takes Lowe's at its representation. If Resh files a new motion to add LHC without dropping Lowe's, Lowe's should file that declaration on the docket.

been reached . . . during the . . . scheduling conference." (Dkt. 46 at 2.)

Resh's newfound opposition is particularly odd, given that Lowe's provided Resh a sworn declaration explaining LHC—and not Lowe's—is the entity that sells the accused pool poles. Resh's position feels like mere obfuscation, and its motion to amend has wasted the Court's time. Given Resh's inconsistent positions, the Court summarily denies its motion without prejudice. The Court strongly suggests that Resh earnestly attempt to reach a resolution with Lowe's in line with the parties' discussion at the scheduling conference or face the risk that the Court will not allow it to add LHC as a party in the future.

### D.   Resh's Motion to Stay Entire Lawsuit

Resh—while objecting to staying its counterclaims against Lowe's alone—moves to stay the entire lawsuit to await resolution of the California case. (Dkt. 39.) It says, pertinent here, the California case deals with three issues that overlap with this case: (1) whether the patents-in-suit are valid; (2) the sufficiency of corroboration of prior art relied upon by the parties in both cases; and (3) whether Resh is entitled to pre-issuance damages for alleged infringement of the '852 patent. (Dkt. 39-2 at 4–5.) Aqua EZ opposes, arguing that Resh "fails to cite any

case in which a court has stayed a patent infringement action pending the outcome of a different patent infringement action, much less one that involved different parties, a different patent, and different accused products." (Dkt. 44 at 1–2.)  According to Aqua EZ, staying this case—particularly because it involves litigation among competitors—is improper.  (Dkt. 44 at 2.)

"As a general matter, the court's authority to issue a stay is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *3rd Eye Surveillance, LLC v. United States*, 160 Fed. Cl. 636, 639 (2022) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).  To issue a stay, the court must "identify a pressing need for the stay," and "balance the interests favoring a stay against interests frustrated by the action."  *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  In patent infringement cases, courts may "'stay [a] case pending a proceeding before the [USPTO] that concerns each patent at issue.'"  *3rd Eye Surveillance*, 160 Fed. Cl. at 639 (citation omitted).  "The court is to consider the circumstances of the case to determine whether granting a stay is appropriate, including 'the stage

of the litigation; whether a stay will simplify the issues; and whether a stay . . . will [unduly] prejudice or present a clear tactical advantage to the nonmoving party.'" *Id.* (citation omitted).

### 1.    USPTO    Proceeding    Versus    Co-Pending Court Case

Resh acknowledges that in deciding whether to stay a patent case in favor of other patent proceedings involving the same patent, the "other proceeding" is "typically a pending related [USPTO] proceeding[.]" (Dkt. 39-2 at 2.)  This is because the USPTO's reexamination of a patent might "'assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.'"  *3rd Eye Surveillance*, 160 Fed. Cl. at 640. According to Resh, this rationale applies with equal force when the other proceeding is another court case.  (Dkt. 39-2 at 4–6.)  And here, Resh says, allowing the California court to first decide issues like patent validity, prior art, and pre-issuance damages would so efficiently streamline those same issues before this Court as to warrant a stay.  (*Id.*)

Resh fails to cite a single case—and the Court can find none—in which a court has stayed a patent infringement case in favor of another infringement case involving different parties, regardless of whether the

other case involves the same patents.  (Dkt. 39-2 at 6 n.3 (conceding "[i]n the cases located by Resh [], the other tribunal is the [USPTO]," and that "apparently there are no other reported decisions").)  The *only* cases Resh cites involve a court's staying a patent case in favor of a pending USPTO proceeding.   And, contrary to Resh's argument, the rationales for allowing a pending USPTO proceeding to take precedence over related patent litigation do not warrant the same consideration when the other proceeding is another court case.

In staying patent cases in favor of concurrent USPTO proceedings, courts often emphasize that the USPTO has technical and specialized expertise that district courts might lack.  "The technical nature of [] patent claims . . . increases the utility of [USPTO] expertise[;] . . . indeed, some courts consider this factor of primary importance."  *Broadcast Innovation L.L.C. v. Charter Comm'n, Inc.*, 2006 WL 1897165, at *4–5 (D. Colo. July 11, 2006); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of [the patent validity] issue or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceeding.)"); *GPAC, Inc. v.*

*DWW Enters., Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992) ("[T]he patent re-examination procedure was clearly intended to provide the federal courts with the expertise of the [USPTO]."). There is no reason to believe the California court has the same patent or technical expertise as the USPTO or greater ability to resolve the dispute than this Court.

This case involves different parties, different accused products, and an additional, different patent from the California case.[3] And this Court is in just as good a position to decide the issues as the California court.[4]

---

[3] Resh says it does not really matter that an additional patent is at issue in this case because the '554 patent "is based on the same application and also includes claims that are very similar" to the '852 patent, and "many of the same issues" in this case are "relevant to both patents," including potential prior art. (Dkt. 39-2 at 4 n.1.) But Resh's entire argument for a stay hinges on its assertion that the California court's resolution of issues like validity and prior art related to the '852 patent will streamline those issues in this case. The California case does not involve the '554 patent, so regardless of how similar it is to the '852 patent, nothing the California court does will have any impact on the validity of the '554 patent and will not obviate this Court's need to adjudicate invalidity and infringement for both patents.

[4] Resh "respectfully" suggests the California court has greater expertise in patent issues than this Court because the district judge overseeing the case has decided more patent cases. (Dkt. 45 at 6.) Resh cites nothing to suggest one district court is better suited to decide an issue than another simply because that court has dealt with the issue more frequently. That argument is a stretch, and the Court rejects it.

So, it is unclear to the Court how staying this litigation would in any way simplify the issues in question or the trial of the case. For example, unlike in an infringement case where the USPTO ultimately finds the patent-in-suit invalid (thus mooting the infringement issue), a finding by the California court that Resh's '852 patent is invalid would have no impact on the claims in this case. The Court is not bound by the California court's decision on validity (or any other issue), and that court (like all other district courts) lacks the power to cancel Resh's patent claims. *See Fresenius USA, Inc. v. Baxter Int'l Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled [by the USPTO], the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."). This is true for issues other than patent validity, too, like whether Aqua EZ and Lowe's can rely on certain prior art to defend Resh's claims of infringement. In fact, in its complaint, Aqua EZ points to another prior art reference (one of its own pool poles) that apparently is not being considered in the California case.

In addition, granting Resh a stay would unduly prejudice Aqua EZ and Lowe's. Unlike a proceeding under the USPTO to determine the

validity of Resh's patents—which Aqua EZ and Lowe's could join as parties—Aqua EZ and Lowe's cannot participate in the California case. *See Automatic Mfg. Systems, Inc. v. Primera Tech., Inc.*, 2013 WL 6133763, at *2 (M.D. Fla. Nov. 21, 2013) (as part of USPTO inter partes proceeding, "a petitioner can challenge the validity of a patent"); *see also Rembrandt Wireless Techs., LP v. Qualcomm Inc.*, 2020 WL 5044195, at *5 (C.D. Cal. Apr. 9, 2020) (noting preclusive effect of USPTO proceedings "'heavily tips the scale in favor of granting [a] stay [when] all the defendants are—or would be—parties to the [proceeding]'") (citation omitted).  Because the California case involves a different accused product created by a different company (and does not include a patent at issue in this case), Aqua EZ and Lowe's could not get involved in that case to raise their claims of invalidity or to defend against Resh's claims of infringement.  This warrants against a stay.  *See Landis*, 299 U.S. at 254 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

A stay would also prejudice Aqua EZ because this case is between direct competitors.  "Courts have recognized that where the parties are

direct competitors, a stay would likely prejudice the non-movant." *eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*, 2011 WL 280942, at *3 (M.D. Fla. Jan. 26, 2011); *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("[C]ompetition between parties can weigh in favor of finding undue prejudice."). Resh has publicly accused Aqua EZ—its direct competitor—of willful patent infringement, including to Lowe's—its significant customer (or only customer according to Resh). Delaying adjudication of that accusation will prejudice Aqua EZ and potentially give Resh an unfair competitive advantage.

In response, Resh does not dispute that Aqua EZ is its direct competitor. Instead, it asserts that it advised Aqua EZ and Lowe's about Aqua EZ's alleged infringement more than six years ago. (Dkt. 45 at 8.) According to Resh, this "undercuts any relevance" of Aqua EZ's status as its competitor. (Dkt. 45 at 9.) The Court is not convinced. Just because Resh has spent several years proclaiming Aqua EZ is a patent infringer does not mean its continuing to do so—all while Aqua EZ is delayed from defending itself—would be any less damaging to Aqua EZ's reputation. So, the parties' competitive relationship warrants against a stay.

In looking at the "'totality of the circumstances,'" the Court

33

concludes a stay is inappropriate. *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (citation omitted).  Other than Resh's counterclaims against Lowe's (which the Court has severed and stayed), this litigation will move forward as scheduled.

## III.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Aqua EZ's and Lowe's Motion Under Rule 12(f) to Strike Surplusage, Irrelevant Paragraphs, and Inappropriate Argument From Resh, Inc.'s Amended Counterclaims (Dkts. 25, 29), **GRANTS** Lowe's Motion to Sever and Stay (Dkt. 30), **DENIES WITHOUT PREJUDICE** Resh's Motion to Add LHC as an Additional Counterclaim Defendant (Dkt. 37), and **DENIES** Resh's Motion to Stay Entire Lawsuit (Dkt. 39).  The Court **DENIES AS MOOT** Resh's Motion for Clarification (Dkt. 47).  The Court **STRIKES** from Resh's Amended Counterclaims (Dkt. 22) Paragraphs 18–38, 63–70, 76–78, 90–99, 115, 119, 120–21, 128, 130–34, 138–156, 157–160, 161–172, and K and L of the prayer for relief.  Resh's claims against Lowe's are **SEVERED** from its claims against Aqua EZ and **STAYED** pending resolution of those claims.

**SO ORDERED** this 11th day of March, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE