IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Aqua EZ, Inc.,

        Plaintiff,

v.   Case No. 1:23-cv-790-MLB

Resh, Inc.,

        Defendant.

_____/

**OPINION & ORDER**

This is a patent case. Defendant Resh, Inc. owns U.S. patent number 11,141,852 ("the '852 patent") for poles used to clean swimming pools. (Dkt. 1 ¶ 20.) Plaintiff Aqua EZ, Inc. filed suit against Resh in February 2023. It asks the Court to declare invalid each claim of the '852 patent and that Aqua EZ has not infringed any valid claim of the '852 patent. (Dkt. 1 ¶¶ 31–37.) Resh filed counterclaims against Aqua EZ and its customer (Lowe's Companies Inc). (Dkt. 22.) Resh seeks so-called "pre-issuance damages." (Dkt. 22 at 34 & ¶¶ 69–70.) Aqua EZ moves for judgment on the pleadings as to that claim. (Dkt. 64.) It also moves for sanctions against Resh under Rule 11 of the Federal Rules of Civil

Procedure, arguing the pre-issuance damages claim is objectively frivolous. (Dkt. 65.) Resh opposes both motions. (Dkt. 66.)

The Court grants Aqua EZ's motion for judgment on the pleadings but denies its motion for sanctions.

## I. Judgment on the Pleadings

### A. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation marks and citation omitted). "In determining whether a party is entitled to judgment on the pleadings," the court "accept[s] as true all material facts alleged in the non-moving party's pleading, and . . . [views] those facts in the light most favorable to the non-moving party." *Id.* "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the

pleadings must be denied." *Id.*

## B. Pre-Issuance Damages

"Generally, patent owners may only collect damages for patent infringement that takes place during the term of the patent." *Rosebud LMS Inc. v. Adobe Sys. Inc.*, 812 F.3d 1070, 1073 (Fed. Cir. 2016); *see also Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008) ("'The patentee may of course obtain damages only for acts of infringement after the issuance of the patent.'") (citation omitted) (cleaned up). The law provides "a narrow exception to that rule." *Rosebud*, 812 F.3d at 1073. Specifically, 35 U.S.C. § 154(d) states that a patent "shall include the right to obtain a reasonable royalty from any person who," with actual notice of a published patent application, makes, uses, or sells the invention claimed in the patent application between the date on which the application is published and the date on which the patent is issued. 35 U.S.C. § 154(d)(1). A patent owner may not recover these pre-issuance royalties "unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application." 35 U.S.C. § 154(d)(2). "Substantially identical" means at least one claim in both the published application and

3

the issued patent must have identical scope, regardless of whether the issued patent uses different words than the published application. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 611 F. App'x 693, 699 (Fed. Cir. 2015); *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("[C]laims are 'identical' to their original counterparts if they are 'without substantive change.'") (citation omitted).

### 1. Similarity of Claims Between Published Application and Issued Patent

The USPTO published Resh's patent application for the '852 patent as United States Patent Publication number US 2018/0009099 A1 ("the 9099 publication"). (Dkts. 64-1 at 2; 64-2 at 2.) Aqua EZ says the claims in the 9099 publication are not substantially identical to the claims in the issued '852 patent, such that even if Resh provided it notice of the 9099 publication, Resh is not entitled to pre-issuance damages as a matter of law. (Dkt. 64 at 6–7.) Resh does not respond to this argument.[1]

---

[1] Confusingly, Resh argues in its response that "[a]lthough Aqua EZ alludes to" the substantial identity requirement, "Aqua EZ does not appear to address or discuss this issue substantively." (Dkt. 66-1 at 10.) The Court is puzzled by Resh's assertion given that Aqua EZ spends more than three full pages describing the material differences between the claims in the 9099 publication and those in the '852 patent, even including a chart placing the differences side-by-side. (Dkt. 64 at 5–9.) It appears Resh is arguing that, because it relies on a separate

4

Accordingly, the Court could grant Aqua EZ judgment on the pleadings for that reason alone. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (internal quotation marks and citation omitted); *Centennial Bank v. M/Y Karacol*, 2022 WL 393365, at *2 (S.D. Fla. Feb. 9, 2022) (granting motion for judgment on the pleadings in part due to defendant's failure to respond). Still, given the Eleventh Circuit's "strong preference for deciding cases on the merits," the Court examines the merits of Aqua EZ's argument. *Perez*, 774 F.3d at 1332. Having done so, the Court agrees Resh cannot show any claim in the 9099 publication is substantially identical to any claim in the '852 patent.

The 9099 publication has two independent claims: 4 and 33. (Dkt. 64-2 at 27–28.) Claims 5 through 32—which are all dependent upon claim 4—all include the limitation of "an inner tube having first and

---

application to obtain pre-issuance damages, Aqua EZ's arguments related to the 9099 publication are irrelevant. As the court explains below, however, the 9099 publication is the only published patent application that could entitle Plaintiff to pre-issuance damages in regard to the '852 patent. Resh had the opportunity to engage Aqua EZ's argument on this front, but affirmatively chose not to do so.

second ends . . . wherein . . . said inner tube includes a wall that extends from one side of the inner tube to the other and crosses at least a portion of the profile of the inner tube." (Dkt. 64-2 at 27–28.) No claim in the '852 patent, however, has such a limitation or anything even related to a "wall that extends" from one side of the inner tube to the other. As for claim 33, the published application includes the limitation, "an outer tube and an inner tube . . . , said inner and outer tubes keyed to prevent relative rotation of the tubes with respect to each other[.]" (Dkt. 64-2 at 28.) None of the claims in the issued '852 patent—other than claim 1—include a limitation requiring the inner and outer tubes to be keyed. While claim 1 contains the same keying mechanism for the inner and outer tubes, it also includes a limitation not found in the 9099 publication (in claim 33 or elsewhere): "the lengths of said outer and inner tubes when engaged with each other being sufficient to permit a user gripping said first end of said inner tube to manipulate the swimming pool cleaning tool and the second end of said outer tube against the bottom of a swimming pool while the user is standing on the side of the pool." (Dkt. 64-2 at 30.) Accordingly, no claim in the 9099 application is substantially identical to any claim in the '852 patent. *See R+L Carriers, Inc. v.*

*Qualcomm, Inc.*, 801 F.3d 1346, 1351 (Fed. Cir. 2015) (where amended claim in patent was narrowed in material way from original claim, the claims were not "substantially identical").

### 2. Relationship Between Published Application and Issued Patent

As explained, Resh doesn't address this dissimilarity allegation. Instead, it disputes Aqua EZ's contention that the proper comparison is the application published for the '852 patent (the 9099 application) and the '852 patent that issued. (Dkt. 66-1 at 6–15.) Resh argues section 154(d) does not require that the "same application for the patent for which pre-issuance damages are sought must have been published." (Dkt. 66-1 at 6 (emphasis omitted).) According to Resh, requiring one-to-one consistency between an application and a patent would mean "a patent applicant must succeed in persuading the Patent Office to issue those published claims on the applicant's 'first try,' or else forfeit the opportunity for an award of pre-issuance damages." (*Id.*)

Building on that, Resh argues that—in a separate patent application—it gave Aqua EZ and Lowe's "express notice" of the '852 patent's claims prior to that patent's issuance. (Dkt. 66-1 at 7.) Although unclear, Resh appears to rely on an email it sent Aqua EZ related to U.S.

7

patent application number 13/844,561 ("the '561 application").  (Dkts. 22 ¶ 112; 66-1 at 7 (describing "express written notice . . . of Resh's published claims, in 2016").)  The '561 application ultimately issued into a patent that is not at relevant to this case.  (Dkt. 22 ¶ 147); U.S. Patent No. 11,090,798 (issued Aug. 17, 2021).[2]  Resh, however, says the '551 notice is enough for it to recover pre-issuance damages.  More specifically, Resh says that, because the patent application for the '852 patent "was a continuation-in-part application that claimed priority to" the '561 application (about which it gave Aqua EZ and Lowe's notice), the Court should look to the claims in the '561 application to determine whether Resh gave Aqua EZ and Lowe's notice about the claims that ultimately issued in the '852 patent.  (Dkt. 66-1 at 7.)

The plain language of § 154(d) contradicts Resh's argument.  The

---

[2] The Court can take judicial notice of the USPTO materials the parties cite.  *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 590 n.3 (Fed. Cl. 2014) (court can take judicial notice of USPTO filings).  And, as discussed below, determining whether Resh is entitled to pre-issuance damages requires the Court to examine USPTO applications, publications, and issued patents.  Because these materials are "undisputed" and "central to" Resh's claim for pre-issuance damages, the Court may consider them without converting Aqua EZ's motion for judgment on the pleadings into a motion for summary judgment.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

8

subsection says, "*a patent* shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of *the* application for *such patent* under section 122(b), . . . and ending on the date *the* patent is issued" infringes "the invention as claimed in *the* published patent application" and who "had actual notice of *the* published patent application." 35 U.S.C. § 154(d)(1). It goes on to explain that the right to obtain such a reasonable royalty is only available if "*the* patent is substantially identical to the invention as claimed in *the* published patent application." 35 U.S.C. § 154(d)(2). The subsection makes no mention of multiple patents or multiple applications. Instead, it unambiguously refers to *one* patent application and *one patent* that issues from that application. In other words, § 154(d) clearly establishes that to obtain pre-issuance damages for an asserted patent, that patent must include a substantially identical claim to a claim in the published application for that same patent. It may be that Resh's desire to compare claims across patents and applications would provide patent holders greater protection. But Congress did not write the law that way.

In arguing otherwise, Resh spends several pages discussing the legislative history of § 154(d) and "long-standing Patent Office practice."

9

(Dkt. 66-1 at 8–15.) But where a Patent Act provision is unambiguous, "statutory interpretation begins and ends with the plain meaning of the text." *Thaler v. Vidal*, 43 F.4th 1207, 1213 (Fed. Cir. 2022). Where, as here, "a statute unambiguously answers the question before [the court]," the court need not "consider additional tools of statutory construction." *Id.* Section 154(d) clearly and unambiguously says pre-issuance damages are only available where the published patent application contains a claim that is substantially identical to a claim in the same patent that issues from that application. So, the Court looks only to the published application that issued into the '852 patent to determine whether Resh may be entitled to pre-issuance damages.

As already explained, no claim in the 9099 application is substantially identical to any claim in the '852 patent. Resh is not entitled to pre-issuance damages as a matter of law.

### C. Sanctions

Aqua EZ moves for sanctions against Resh, arguing Resh's claim for pre-issuance damages was "objectively frivolous." (Dkt. 65 at 1.) Resh says case law did not foreclose its argument on pre-issuance damages or otherwise indicate its claim was entirely baseless. (Dkt. 66-1 at 2–5.)

While a really close call, the Court determines sanctions against Resh are not warranted—at least not this time.

A court may issue sanctions under Rule 11 of the Federal Rules of Civil Procedure where, among other things, a party's pleadings had "no reasonable factual basis," were "based on a legal theory that had no reasonable chance of success and that [could] not be advanced as a reasonable argument to change existing law," or "were filed in bad faith or for an improper purpose." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (internal quotation marks and citation omitted). "[A] court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). In deciding whether a claim is objectively frivolous, the court must "determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

11

In arguing Resh's claim for pre-issuance damages was objectively frivolous, Aqua EZ says: (1) the plain language of 35 U.S.C. § 154(d) clearly foreclosed Resh's claim; (2) Resh purportedly raised an identical claim in a related case that another court rejected; and (3) Resh asserted the pre-issuance claim for the "improper purpose . . . to greatly magnify its damages claim to encompass years of sales that precede the issuance of the '852 patent." (Dkt. 65 at 3–6.)

First (and as noted above), the Court agrees that § 154(d)'s plain language precludes Resh's argument about the '561 application. But, just because Resh's argument was "unavailing," does not mean it was "frivolous." *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563–64 (11th Cir. 1992). Case law examining the bounds of § 154(d) is scarce. The Court has found no case—and Aqua EZ cites none—answering the precise question Aqua EZ raised in its motion for judgment on the pleadings (*i.e.*, whether § 154(d) can apply to a related patent application with similar claims even though that application did not issue into the asserted patent). True, Resh's arguments about the legislative history of § 154(d) and "long-standing Patent Office practice" are—at best—a stretch. (Dkt. 66-1 at 12–13.) It is well-settled that legislative history

and other extra-textual evidence is irrelevant when a statute is unambiguous. *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (when "[t]he text [of a statute] is clear," the court "need not consider . . . extra-textual evidence"). But, because few courts have examined the bounds of § 154(d), the Court cannot say Resh's argument about the statute's ambiguity was so unreasonable as to be frivolous.

Second, Aqua EZ says the court in *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054 (N.D. Cal. 2023), already rejected a similar argument Resh made about pre-issuance damages. (Dkt. 65 at 4–6.) But the *Skimlite* court was not tasked with answering the precise question before this Court—*i.e.*, whether an alleged infringer's knowledge of the application for a similar but separate patent can impose pre-issuance liability for the patent-in-suit. In *Skimlite*, one of the allegedly infringing defendants moved to dismiss on grounds Resh had not alleged any infringing conduct after the issuance of the patent-in-suit. *Id.* at 1060. In response, Resh argued the defendant's pre-issuance conduct could constitute evidence of later infringement because of the ability for patent owners to recover pre-issuance damages under § 154(d). *Id.* Resh specifically argued "the availability of pre-issuance damages 'suggests'

13

that 'it seems consistent with Congressional intent to consider Defendants' "pre-issuance" infringing actions as constituting infringement.'" *Id.* The court rejected that argument, explaining Resh provided "no legal or case authority to support the conflation of acts constituting infringement with acts supporting recoverable damages," and emphasized that "federal courts confronted with similar arguments have reinforced the principle that 'liability for infringing claims . . . could not attach to any actions taken before the USPTO issued those claims.'" 666 F. Supp. 3d 1054 (N.D. Cal. 2023) (citation omitted). Accordingly, the court concluded Resh could not rely on the defendant's pre-issuance conduct to prove post-issuance infringement. That was different than the issue here. *Skimlite* did not sufficiently inform Resh about the frivolity of its arguments about pre-issuance liability so as to warrant sanctions.[3]

Third and finally, Aqua EZ contends Resh—knowing its argument was frivolous—asserted its claim for pre-issuance damages only to

---

[3] The Court acknowledges Resh raised an identical claim for pre-issuance damages in *Skimlite*. *Resh, Inc. v. Robert Conrad, Inc., et al.*, Case No. 5:22-cv-1427-EJD (N.D. Cal.), Dkt. 114 at 23–27. Still, the *Skimlite* order Aqua EZ relies on did not examine the merits of that claim. Aqua EZ has not pointed the Court to anything showing the *Skimlite* court has addressed that question.

14

amplify its potential damages. (Dkt. 65 at 4–7.) Because the Court already concluded Resh's argument on this front was not objectively frivolous, it cannot say Resh raised it in bad faith for the sole purpose of increasing damages. *See Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1239 (S.D. Fla. 2008) (holding plaintiff did not bring suit for improper purpose where plaintiff's counsel "was pursuing a legal theory, though meritless, that would expand" certain statutory rights and there was not "adequate proof to show that this action was motivated by extortion to any extent, much less that this improper purpose constituted the sole reason for bringing the lawsuit").

The Court declines to impose sanctions at this point. It emphasizes, however, that Resh is now on notice that its argument about pre-issuance damages is borderline frivolous. Perhaps a future court will impose sanctions if Resh raises this argument again.

## II. Conclusion

The Court **GRANTS** Aqua EZ's Motion for Judgment on the Pleadings on the Issue of Pre-Issuance Damages (Dkt. 64) and **DENIES** Aqua EZ's Motion for Sanctions Under Fed. R. Civ. P. 11 (Dkt. 65).

**SO ORDERED** this 10th day of September, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

16