# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Aqua EZ, Inc.,

                  Plaintiff,

v.

Resh, Inc.,

                  Defendant.

Case No. 1:23-cv-790-MLB

_____

Resh, Inc.,

           Counterclaim Plaintiff,

v.

Aqua EZ, Inc., and Lowe's Companies, Inc.

          Counterclaim Defendants.

_____/

## **OPINION & ORDER**

This is a patent case. Aqua EZ, Inc. moves for partial summary judgment, seeking to collaterally estop Resh, Inc. from asserting various patent claims—some that were recently invalidated by a California

district court and others that Aqua EZ contends are materially similar to the invalidated claims. (Dkt. 104.) Resh, in turn, moves to stay this case pending the final resolution of the California case. (Dkt. 105.)

## I.    Background

For many years, Aqua EZ manufactured and sold a telescoping aluminum pole used for cleaning pools. (Dkt. 1 ¶ 23.) At some point, Resh applied for a patent for its own pool pole. (*Id*. ¶ 20.) While Resh's patent application was pending, Resh threatened to sue Aqua EZ for patent infringement based on Aqua EZ's sale of its telescoping pole. (*Id*. ¶¶ 8, 11, 21.) In October 2021, the United States Patent and Trademark Office granted Resh's application and issued U.S. patent number 11,141,852 ("the '852 patent"). (*Id*. ¶¶ 10–11.) Resh continued threatening to sue Aqua EZ for patent infringement. (*Id*. ¶¶ 11–13.) Aqua EZ sued Resh in February 2023, asking the Court to declare that each claim of Resh's '852 patent is invalid and that Aqua EZ has not infringed any valid claim of the '852 patent. (*Id*.)

In April 2023, Resh obtained U.S. patent number 11,628,554 ("the '554 patent") for a different, but related, pool pole. (Dkt. 109-1 at 3.) The '852 and '554 patents both claim priority to the same provisional and

2

nonprovisional application numbers and share several other similarities. (*Id.*)  Resh filed counterclaims against Aqua EZ, claiming Aqua EZ's pool pole infringes claims 1-3, 6-8, 11, 16-19, 21-22 and 24 of the '852 patent and claims 1-3, 6-8, 11, 16-19, 21-22, 24-27, 29, and 31-32 of the '554 patent.  (*Id.* at 4.)

The '852 patent is also the subject of an ongoing lawsuit in the Northern District of California, *Resh v. Conrad, et al.*, 5:22-cv-1427-EJD (the "*Skimlite*" case).  (*Id.*)  In that case, Resh sued defendants Robert Conrad, Inc., d/b/a Skimlite Manufacturing, James R. Conrad, and Barrett R. Conrad, claiming they infringed the '852 patent.  (*Id.*)  In March 2025, the California court entered a partial summary judgment order ruling that claims 1-3, 6-8, 11, 16, 18-19, and 21-24 of the '852 patent are invalid as obvious under 35 U.S.C. §103.  (*Id.* at 5.)  Only one claim (not at issue here) remains in the *Skimlite* case, and the parties are set to proceed to trial on Skimlite's alleged infringement of that claim in May 2026.  (*Skimlite* Dkt. 161.)[1]

---

[1] Though the parties' statements of material fact do not reference the California court order setting a trial, the Court takes judicial notice of it. The Court may take judicial notice of another court's orders for "the limited purpose of recognizing the 'judicial act' that the order represents

Following the California court's invalidation of the '852 patent claims, Aqua EZ moved for partial summary judgment here, seeking to use the *Skimlite* order to collaterally estop Resh from asserting the invalidated '852 patent claims in this case. (Dkt. 104.) Aqua EZ also seeks to collaterally estop Resh from asserting certain claims of the '554 patent that are similar to the invalidated '852 claims. (*Id*.) Resh opposes that motion and moves for a stay of this case until final resolution of the *Skimlite* case. (Dkt. 105.)

## II. Motion to Stay

The Court begins by addressing Resh's Second Motion to Stay Entire Lawsuit (Dkt. 105). Resh renews its request from its first stay motion, again asking the Court to stay this case pending the resolution of the *Skimlite* case. (Dkt. 105.) The Court denied the first stay motion. (Dkt. 77.) This time around, Resh says a stay is warranted by new developments in this case and the *Skimlite* case. (Dkt. 105 at 2.) Resh

---

or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). It will do so at various points in this Order with regards to other orders in the *Skimlite* case.

contends Aqua EZ's partial summary judgment motion amounts to a concession that the resolution of the *Skimlite* case will necessarily impact this case and thus warrants a stay until the California litigation wraps up. (Dkt. 105 at 4.) But Resh's stay motion rests on a misunderstanding of the substance of the *Skimlite* order, its impact on this case, and the manner in which Aqua EZ seeks to use it.

The March 2025 *Skimlite* order invalidated thirteen '852 patent claims that Resh asserted against the defendants in that case; Resh asserts the same thirteen claims against Aqua EZ in this litigation. (Dkt. 104-4 at 37; Dkt 104-5.) The only issues remaining in the *Skimlite* case are whether claim 20 of the '852 patent is valid, whether the defendants infringed that claim, and, if so, what the damages are for that infringement.[2] (Dkt. 104-4 at 37.) Critically, Resh does not assert claim 20 of the '852 patent against Aqua EZ in this case. Because that claim is not at issue in this litigation, nothing that happens in the *Skimlite* case from this point forward (at least in the district court) will impact the

---

[2] The *Skimlite* court denied Resh's motion for leave to file a motion for reconsideration of the partial summary judgment order. (*Skimlite* Dkt. 151.)

claims in this case.  So the Court sees no reason *at all* to stay this case pending the upcoming trial in *Skimlite*.

Out of Resh's several (mostly confusing) arguments in its stay motion, the Court finds only one actually bears on whether a stay is warranted.[3]  Despite the clear effect of the *Skimlite* order—unequivocal and final invalidation of the '852 claims—Resh argues the court's ruling regarding the '852 claims is non-final because it *may* not be upheld by the Federal Circuit on appeal.  (Dkt. 107 at 2.)  In turn, Resh believes its "requested stay avoids t[he] foreseeable problem" of this Court adjudicating its claims twice—once now and again later if the Federal

---

[3] Rather than provide factual and legal argument relevant to its requested stay, Resh uses its Motion as an opportunity to argue unrelated issues.  Resh, for example, argues the *Skimlite* order was wrongly decided (Dkt. 107 at 3–4); this Court should reconsider certain language in its prior stay order (*Id.* at 5–7); and Aqua EZ should not be able to claim issue preclusion because of that language (Dkt. 105 at 3–4).  Of course, it is not this Court's place to evaluate Resh's "potential points for appeal of the [*Skimlite*] summary judgment order."  (Dkt. 107 at 3.)  Further, the Court's prior comment—in a footnote—that "nothing the California court does will have any impact on the validity of the '554 patent and will not obviate this Court's need to adjudicate invalidity and infringement for both patents" certainly does not counsel in favor of a stay.  (Dkt. 77 at 30.)  And whether Aqua EZ can claim issue preclusion in the light of that comment is a question relevant to its partial summary judgment motion, not Resh's stay motion.

Circuit reverses the *Skimlite* court. (*Id.*) True, if this Court were to grant Aqua EZ's partial summary judgment motion based on issue preclusion from the *Skimlite* case and the Federal Circuit were to later reverse the *Skimlite* order, that would create more work for the Court down the line. (*Id.*) But the Federal Rules contemplate that possibility and provide a mechanism to address it. *See* Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment [or] order … [if] it is based on an earlier judgment that has been reversed or vacated.") And, if the Court were to stay the case until Resh's *Skimlite* appeal were resolved, the stay would last far beyond the May 12th trial date.

In short, a stay of this case pending the resolution of *Skimlite* would accomplish nothing. The issues remaining in that case are unrelated to the issues remaining here. To the extent the *Skimlite* court can streamline issues to be resolved here, that benefit has been realized. The Court denies Resh's request for a stay.

## III.  Partial Summary Judgment

Aqua EZ moves for partial summary judgment, arguing the *Skimlite* order invalidating certain claims of the '852 patent collaterally

estops Resh from asserting those claims and others against Aqua EZ.[4]
Specifically, Aqua EZ seeks to collaterally estop Resh from asserting '852
patent claims 1-3, 6-8, 11, 16, 18-19, 21-22, and 24, as well as '554 patent
claims 1-3, 6-8, 11, 16, 18-19, 21-22, 26-27, 29, and 31-32.

## A.    Legal Standard

### 1.    Summary Judgment

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party
moving for summary judgment bears the initial burden of showing a
court, by reference to materials in the record, that there is no genuine
dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357
F.3d 1256, 1260 (11th Cir. 2004).  The nonmoving party then has the
burden of showing summary judgment is improper by coming forward
with "specific facts" demonstrating a genuine dispute. *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately,

---

[4] The summary judgment motion is partial because Aqua EZ does not
seek invalidation of claim 17 of the '852 patent or claims 17, 24, and 25
of the '554 patent. (Dkt. 104-1 at 2.)  The *Skimlite* order did not consider
those claims.

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

### 2. Collateral Estoppel

"[A] party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (preclusion "relieve[s] parties of the cost and vexation of multiple lawsuits"). "Collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries and precludes a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

A party is collaterally estoppel from relitigating issues when: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation [was] 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted [] had a full and fair

opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). In a patent case, the law of the regional circuit applies to collateral estoppel generally and Federal Circuit precedent applies "to those aspects of such a determination that involve substantive issues of patent law." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

### B.    Non-Final Judgment

As a threshold matter, the Court must address the parties dispute over whether the *Skimlite* order—a partial summary judgment order—was sufficiently "final" to permit collateral estoppel. (Dkt. 104 at 13–14; Dkt. 109 at 9–10.) It is "widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion." *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003) (quoting *Christo v. Padgett,* 223 F.3d 1324, 1339 (11th Cir. 2000)). "For purposes of issue preclusion ... final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* The test for finality in the Eleventh Circuit is "whether the prior decision was 'adequately deliberated and firm' or

'avowedly tentative,' and whether the parties were fully heard in the prior proceeding." *Id.*

Applying that test and Eleventh Circuit law in *Dana*, the Federal Circuit found a California court's non-final, partial summary judgment order—finding defendants infringed plaintiff's valid patent (owned by another party at the time of the California case)—could be used by the plaintiff to preclude defendants from arguing infringement and validity in a subsequent Florida case. *Id.* at 1322–25. The court found the California order "sufficiently final to be accorded conclusive effect" because it "considered the issue of direct infringement and validity to be conclusively decided and complete, with only damages and a separate claim on inducement of infringement remaining as open issues." *Id.* at 1324.

The Federal Circuit reached its conclusion in *Dana* in large part by analogizing the order before it to an order at issue in *Christo. Id.* In that case, the Eleventh Circuit found certain "preliminary findings" in a bankruptcy case—including that the defendant had not entered into an oral agreement—could be used to collaterally estop plaintiffs from asserting that contract against him in a separate, but related district

court proceeding. 223 F.3d at 1339. The Eleventh Circuit held the "preliminary findings" were sufficiently final for collateral estoppel purposes because the district court held an evidentiary hearing, warned the parties its decision from that hearing could have preclusive effect, "considered a wide range of evidence from all parties," and wrote a substantial order explaining its findings. 223 F.3d at 1339.

Resh does not discuss *Dana* or *Christo* and instead points the Court to *RF Delaware v. Pacific Keystone Techs., Inc.*, a case in which the Federal Circuit (applying Eleventh Circuit law) found claim construction orders on motions for partial summary judgment were not "sufficiently firm to have preclusive effect."[5] 326 F.3d 1255 (Fed. Cir. 2003). The Federal Circuit reached that conclusion by distinguishing *Christo* on two grounds. *Id.* at 1262. First, the district court did not hold an evidentiary hearing prior to its partial summary judgment ruling—as the district court in *Christo* had done. The Federal Circuit thus found it "questionable whether the parties were fully heard." *Id.* Second, the

---

[5] Resh also relies on cases from the Third Circuit, Ninth Circuit, and Northern District of California. But as explained, in a patent case, the law of the regional circuit determines the contours of collateral estoppel.

district court had not warned the parties that its orders on partial summary judgment would have preclusive effect—as the district court in *Christo* had done. *Id.*

The Court finds this case closer to *Dana* and *Christo* than *RF Delaware.* Just as in *Dana*, the *Skimlite* order "considered the issue of direct infringement and validity to be conclusively decided and complete," leaving only a single claim (not at issue here) remaining. (*Skimlite* Dkt. 148 ("In sum, based on the undisputed facts, the Challenged Claims are invalid as obvious … Defendants are entitled to summary judgment that claims 1–3, 6–8, 11, 16, 18–19, and 21–24 of the '852 Patent are invalid as obvious under 35 U.S.C. §103"); *Dana*, 342 F.3d at 1324.) Unlike in *RF Delaware* there can be no doubt that Resh was "fully heard" on the issue: the *Skimlite* order was fully briefed by the parties, Resh had the opportunity to raise additional arguments at a summary judgment hearing, and the California court considered Resh's motion for leave to seek reconsideration. (*See Skimlite* Dkts. 126, 129, 132, 135, 139.) Finally, as in *Christo*, Resh was on notice that the California court's summary judgment order could have preclusive effect elsewhere. By the time Skimlite filed its summary judgment motion in the California case,

13

this case—involving precisely the same patent and claims—had been pending for nearly seventeen months.  (Dkt. 1; *Skimlite* Dkt. 129.)  Resh must have known Aqua EZ would seek to collaterally estop it from relitigating the same issues in this case that it was fighting in the *Skimlite* case.  Indeed, long before the *Skimlite* order, Resh acknowledged this possibility in its first stay motion: "If the ND CA court finds that [Skimlite's product] does qualify as prior art …, that ruling presumably impact, reduce, or possibly eliminate the need for this Court to consider that issue."  (Dkt. 39-2 at 6.)

The *Skimlite* partial summary judgment order was both "adequately deliberated" and "sufficiently firm to be accorded conclusive effect" here.  *See Dana*, 342 F.3d at 1323.

## C.    '852 Patent: Claims 1-3, 6-8, 11, 16, 18-19, 21-24

The Court next considers whether collateral estoppel applies here to prevent Resh from asserting Claims 1-3, 6-8, 11, 16, 18-19, 21-24 of the '852 Patent against Aqua EZ.  The Court concludes it does.

The first prong of the Eleventh Circuit's collateral estoppel framework asks whether the issues involved in the two subject actions are "identical."  The *Skimlite* order found Claims 1-3, 6-8, 11, 16, 18-19,

21-24 of the '852 Patent invalid as obvious under 35 U.S.C. § 103.  (Dkt.
104-4 at 34.)  Resh asserts those *exact same claims* against Aqua EZ in
this case, and the parties here likewise dispute whether the '852 patent
is invalid as obvious.  (*See, e.g.*, Dkt. 1 ¶ 27.)   So the issues in this case
pertaining to the '852 patent are "identical to [those] decided in the
[*Skimlite*] proceeding," and Aqua EZ has satisfied the first prong of
collateral estoppel.  *Pleming*, 142 F.3d at 1359; *see also Aspex Eyewear,
Inc. v. Zenni Optical, LLC*, 2012 WL 9500667, at *6 (S.D. Fla. Mar. 21,
2012) *aff'd sub nom. Aspex Eyewear, Inc*, 713 F.3d 1377 (precluding
plaintiffs in Florida case from asserting claim of patent invalidated for
obviousness in "co-pending" Massachusetts case involving same
plaintiffs).[6]  Indeed, Resh does not dispute this conclusion.

---

[6] In *Aspex Eyewear*, the district court also denied plaintiffs' request to
stay the Florida case until they exhausted all their appeals in the parallel
Massachusetts case.  The Court found that "[t]he law is well settled that
the pendency of an appeal has no effect on the finality or binding effect
of a trial court's holding" and that this "rule is applicable to holdings of
patent invalidity as well."  2012 WL 9500667, at *8 (quoting *Pharmacia
& Upjohn Co. v. Mylan Pharma., Inc.,* 170 F.3d 1373, 1381
(Fed.Cir.1999)).  This provides further support for the Court's decision to
deny Resh's stay motion.

Next, the Court considers whether the issue of invalidity "was actually litigated" in the *Skimlite* action. *Pleming*, 142 F.3d at 1359. "An issue is considered actually litigated when the issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1267–68 (11th Cir. 2011). All that happened in *Skimlite*. Skimlite raised the issue of invalidity of the '852 patent claims in its motion for summary judgment, Resh had the opportunity to contest the issue in both its opposition brief and at a hearing, and the district court decided the issue in a thorough order. (*Skimlite* Dkts. 129, 132, 148.) Aqua EZ has satisfied the second prong of collateral estoppel, and (again) Resh does not really argue otherwise.

The third prong of collateral estoppel asks whether resolution of the invalidity issue was "a critical and necessary part of the judgment in the [*Skimlite*] action." *Dana*, 342 F.3d at 1323. That element is easily met here. Finding the '852 patent claims invalid for obviousness was essential to the California court's grant of summary judgment to Skimlite on those claims—indeed, it was the *only* reason the court reached that

outcome.  Resh again makes no contrary argument so Aqua EZ has established the third element.

Finally, the Court considers whether Resh had "a full and fair opportunity to litigate the issue" in *Skimlite. Pleming*, 142 F.3d at 1359. It did.  As discussed, Resh fully briefed the issue, participated in a hearing on the summary judgment motion, and moved for leave to file a motion for reconsideration.  The parties' litigation of Skimlite's summary judgment motion could hardly have been more "fair" or "full."

Nevertheless, Resh argues it did not have a full and fair opportunity to litigate the validity of the '852 patent "due to the California court's formal constraints."  (Dkt. 109 at 12.)  It takes issue with the Northern District of California's local rules limiting parties to a single motion for summary judgment and setting a page limit, which it claims "extremely limited [Resh] in its ability to present in the California lawsuit its [] objective evidence of non-obviousness."  (Dkt. 109-2 at 5–6.)   Resh explains that, in this case, it intends to "retain and use an independent patent expert and to qualify inventor Eric Resh as an expert . . . and to present in even greater detail the extensive objective indicia or non-obviousness (including copying and long felt but unresolved need)."  (Dkt.

109 at 11.)  Putting aside that it is not this Court's place to second-guess the wisdom of another district court's local rules, what Resh seeks is not a "full and fair opportunity" to litigate the '852 patent but something more—special treatment.  Resh was not denied the opportunity to fully or fairly litigate invalidity simply because it had to comply with the same local rules that every litigant in the Northern District of California must follow.  And if Resh felt it could not present its issues and arguments because of page limitations, it could have moved for more pages.[7]  The Court sees no indication it did so on the *Skimlite* docket.  If a party could avoid this element of collateral estoppel by simply arguing they would have liked more pages or briefing opportunities, the doctrine would evaporate.  In the end, Resh's arguments don't show the California court denied him a full and fair opportunity to present its position.  Rather,

---

[7] In his declaration in support of Resh's opposition, counsel for Resh suggests the California court somehow "precluded Resh's counsel's oral argument" on the issues of "long-felt but unresolved need" and copying. (Dkt, 109-2.)  The declaration does not explain how or where the California court did so.  (Dkt. 109-2 at 6.)  Indeed, it appears the California court permitted Resh's counsel to discuss those issues at length at the summary judgment hearing.  (*See, e.g.*, *Skimlite* Dkt. 141 at 50:6–57:7, 92:14–93:1.)  So the Court is unsure how this prevented Resh from having a "full and fair opportunity" to litigate in the California case.

they show Resh's desire to adjust its approach and present a better argument here with a second bite at the apple—the exact process collateral estoppel seeks to avoid. The Court concludes Aqua EZ has shown the fourth and final prong of collateral estoppel.

Resh is collaterally estopped from asserting claims 1-3, 6-8, 11, 16, 18-19, 21-24 of the '852 patent against Aqua EZ in this case. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,* 170 F.3d 1373, 1379 (Fed. Cir. 1999) ("[O]nce the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under the principles of collateral estoppel."); *see also Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313 (1971) (same).

The Court notes that Resh's summary judgment opposition hardly addressed the issue of collateral estoppel, instead spending most of its brief arguing that the California court improperly invalidated the '852 patent and, once again, arguing for a stay on much the same grounds as in its stay motion. (Dkt. 109 at 2–8.) As to the latter argument, the Court refers Resh to its discussion above. As to the former, "it is clear from the

case law that has developed since [the Supreme Court's 1971 decision in] *Blonder–Tongue* that an *inappropriate* inquiry [in applying collateral estoppel] is whether the prior finding of [patent] invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful lawsuit." *Pharmacia,* 170 F.3d at 1380 (emphasis added). Because Resh had a full and fair opportunity, this Court will not evaluate the correctness of the California court's finding of invalidity. Doing that would defeat the doctrine of collateral estoppel's "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 (1979).

### D.    '554 Patent

The '554 patent covers a telescopic pole related to, and sharing several similarities with, the '852 patent. (Dkt. 109-1 at 3.) Both patents claim priority to provisional application number 61/538,074 and nonprovisional application numbers 13/624,702 and 13/844,561. (*Id.*) Figures 1 through 25 of both patents are nearly—if not entirely—

identical.  (*Compare* Dkt. 104-7 at 6–21 *with* Dkt. 104-8 at 4–19.)  The "Field of the Invention" section of each patent is identical.  (*Compare* Dkt. 104-7 at 22 *with* Dkt. 104-8 at 26.)  And the Background of the Invention and Objects and Advantages of the Invention sections of both patents are also nearly identical.[8]  (*Compare* Dkt. 104-7 at 22–25 *with* Dkt. 104-8 at 26–29.)

The California court did not adjudicate the '554 patent.  Aqua EZ, nevertheless, also seeks to collaterally estop Resh from asserting claims 1-3, 6-8, 11, 16, 18-19, 21, 22, 26-27, 29, and 31-32 of that patent.  Generally, collateral estoppel requires "identical" issues to be presented in two cases. *See, e.g.*, *Pleming*, 142 F.3d at 1359.  Federal Circuit "precedent, [however,] does not limit collateral estoppel to patent claims that are identical."  *Ohio Willow Wood*, 735 F.3d at 1342.  Rather, "[i]f the differences between the unadjudicated patent claims and adjudicated

---

[8] Though Resh objects to Aqua EZ's statement of undisputed material fact No. 3 that portions of the '554 and '852 patents are "substantively identical," the Court does not consider this to be a disputed fact.  Aqua EZ's assertion is not a "fact," but rather an "issue or legal conclusion." *See* LR 56.1(B)(1)(c).  The Court's comparison of the '554 and '852 patents is not based on Aqua EZ's statement of facts, but rather its own independent review of the patents.

patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.*

Aqua EZ seeks to apply that principle to unadjudicated claims 1-3, 6-8, 11, 16, 18-19, 21, 22, 26-27, 29, and 31-32 of the '554 patent, arguing that the slight differences in language and substance between those claims and the adjudicated claims of the '852 patent are immaterial and, thus, the '554 patent claims are invalid as well.

Resh does not respond to this argument. Instead, as discussed above, it merely contends that the California order was non-final and wrongly decided, this case should be stayed, and it did not have a "full and fair" opportunity to litigate the '554 patent.[9] (Dkt. 109.) Having already addressed and dismissed each of those arguments, the Court turns to Aqua EZ's contention—whether the differences between the

---

[9] Despite Resh's suggestion to the contrary (Dkt. 109 at 12), the fact Resh did not have the opportunity to litigate the '554 patent in the *Skimlite* case does not necessarily mean the "full and fair" prong can't be met. Indeed, under *Ohio Willow Wood*, collateral estoppel can apply even to *unadjudicated* claims if the patentee had the full and fair opportunity to litigate materially similar claims in another court. Applying that principle here, what matters for the "full and fair opportunity" prong of the '554 patent's collateral estoppel analysis is whether Resh had the "full and fair opportunity" to litigate *the '852 patent* in the California court.

invalid '852 patent claims and the '554 claims "materially alter the question of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342. If they do not, collateral estoppel applies.

### 1. Claims 1-3, 6-8, 11, 16, 18-19, 26-27, 29

Claims 3, 6-8, 11, 16, 18-19, 27, and 29 of the '554 patent are *identical* to invalidated claims 3, 6-8, 11, 16, 18-19, 22, and 24 of the '852 patent. (Dkt. 104-9 at 1–5.) Since there is no difference whatsoever between those claims, there certainly can be no difference that "materially alters the question of invalidity." Those claims of the '554 patent are invalid as obvious.

Claims 1, 2, and 26 of the '554 patent are identical to claims 1, 2, and 21 of the '852 patent except for the addition of the limitation "**in which said inner and outer tubes are aluminum**" at the end of the '554 claims.[10] (Dkt. 104-9 at 1–5.) The following chart illustrates this by including this slight change in bold:

---

[10] The language of claims 1-3, 6-8, 11, 16, and 18-19 in the '554 patent corresponds to the same numbered claims in '852 patent, and claims 21, 22, and 24 of the '852 patent correspond with claims 26, 27, and 29 of the '554 patent, respectively. As noted above, other than claims 1, 2, and 26, each claim is identical to their counterpart in the other patent.

| **'852 Patent** | **'554 Patent** |
|---|---|
| **Claim 1** | **Claim 1** |
| An elongated telescoping pole apparatus, including: an elongated outer tube; an elongated inner tube configured and sized to be slid-able within said outer tube; said inner and outer tubes keyed to prevent relative rotation of the tubes with respect to each other around a central longitudinal axis through the tubes; said outer tube having first and second ends, said first end of said outer tube having a selectively actuatable detent configured to engage said inner tube at a selected position along the length of said inner tube, said second end of said outer tube having structure for removably attaching a tool; said inner tube having first and second ends, said first end being received in said slidable relationship within said outer tube, said second end having a grip attached thereto, said selective sliding action of the tubes causing the respective distance between said grip on said inner tube and said actuatable detent on said first end of said outer tube to change; the lengths of said outer and inner tubes when engaged, with each other being sufficient to permit a user grip-ping said first end of said inner tube to manipulate the swimming pool cleaning tool at the second end of said outer tube against the bottom of a swimming pool while the user is standing on the side of the pool. | An elongated telescoping pole apparatus, including: an elongated outer tube; an elongated inner tube configured and sized to be slid-able within said outer tube; said inner and outer tubes keyed to prevent relative rotation of the tubes with respect to each other around a central longitudinal axis through the tubes; said outer tube having first and second ends, said first end of said outer tube having a selectively actuatable detent configured to engage said inner tube at a selected position along the length of said inner tube, said second end of said outer tube having structure for removably attaching a tool; said inner tube having first and second ends, said first end being received in said slidable relationship within said outer tube, said second end having a grip attached thereto, said selective sliding action of the tubes causing the respective distance between said grip on said inner tube and said actuatable detent on said first end of said outer tube to change; the lengths of said outer and inner tubes when engaged, with each other being sufficient to permit a user grip-ping said first end of said inner tube to manipulate the swimming pool cleaning tool at the second end of said outer tube against the bottom of a swimming pool while the user is standing on the side of the pool; **in which said inner and outer tubes are aluminum.** |

| Claim 2 | Claim 2 |
|---|---|
| A telescoping pole apparatus, including: an outer tube having first and second ends, said first end of the outer tube having a collar associated therewith, said collar containing a selectively actuatable detent, said second end of said outer tube having structure for removably attaching a tool; an inner tube having first and second ends, said first end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate the apparatus, said second end of said inner tube being slidably received in the first end of the outer tube through an opening in said collar, said inner tube having a plurality of detent holes positioned to be engaged with said actuatable detent, said inner tube being a single wall tube that is hollow along at least substantially its length between said first and second ends of said inner tube; and said inner tube configured to slide within said outer tube to a selectable position relative to the outer tube, at which position said detent is configured to temporarily engage and hold said inner tube. | A telescoping pole apparatus, including: an outer tube having first and second ends, said first end of the outer tube having a collar associated therewith, said collar containing a selectively actuatable detent, said second end of said outer tube having structure for removably attaching a tool; an inner tube having first and second ends, said first end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate the apparatus, said second end of said inner tube being slidably received in the first end of the outer tube through an opening in said collar, said inner tube having a plurality of detent holes positioned to be engaged with said actuatable detent, said inner tube being a single wall tube that is hollow along at least substantially its length between said first and second ends of said inner tube; and said inner tube configured to slide within said outer tube to a selectable position relative to the outer tube, at which position said detent is configured to temporarily engage and hold said inner tube; **in which said inner and outer tubes are aluminum.** |
| **Claim 21** | **Claim 26** |
| An improved telepole device, comprising: an outer tube element having first and second ends, said first end of the outer tube element having a collar element associated therewith, said collar element containing a detent means, said second end of the outer tube having attachment | An improved telepole device, comprising: an outer tube element having first and second ends, said first end of the outer tube element having a collar element associated therewith, said collar element containing a detent means, said second end of the outer tube having attachment |

| | |
|---|---|
| means for removably attaching a tool; an inner tube element having first and second ends; said second end of said inner tube element being received in the first end of the outer tube through an opening in said collar element; wherein said inner tube element is configured to readily slide within said outer tube element to a selected position along the length of the outer tube, and wherein said detent means is configured to temporarily lock the inner tube in that selected position within the outer tube. | means for removably attaching a tool; an inner tube element having first and second ends; said second end of said inner tube element being received in the first end of the outer tube through an opening in said collar element; wherein said inner tube element is configured to readily slide within said outer tube element to a selected position along the length of the outer tube, and wherein said detent means is configured to temporarily lock the inner tube in that selected position within the outer tube; **in which said inner and outer tubes are aluminum**. |

(Dkt. 104-9 at 1–4.)

Under *Ohio Willow Wood*, the question is whether the addition of the limitation in claims 1, 2, and 26 of the '554 patent that the inner and outer tubes are aluminum "materially alters" the California court's obviousness determination. *See* 753 F.3d at 1342. Aqua EZ contends the *Skimlite* order already answered that question in the negative when it evaluated the effect of similar language in claim 19 of the '852 patent. (Dkt. 104-1 at 17.) Claim 19 of the '852 patent is dependent upon claim 2 of that patent and simply adds one limitation to it: "The apparatus of claim 2, said inner and outer tubes are formed from a relatively lightweight material such as aluminum." (Dkt. 104-9 at 3.) The *Skimlite*

order found the addition of this limitation did not save the claim from a finding of obviousness:

> Claim 19 recites that the telepole tubes [of claim 2] are made of a 'relatively lightweight material such as aluminum.' … [Defendants' expert opined] that a [person of ordinary skill in the art ("POSA")] 'would have recognized that it was desirable to make the pole from a lightweight material' and 'such poles were known in the industry' … [B]ased on the existence of aluminum pool poles already in the industry, it is plain to see that—and Resh does not dispute—a POSA would have had a reasonable expectation of success in using an aluminum pole.

(Dkt. 104-4 at 27.)  Aqua EZ reasons that, if the addition of that limitation to claim 19 of the '852 patent was obvious, appending a near-identical limitation to claims 1, 2, and 26 of the '554 patent would not save those claims from the same fate as claims 1, 2, and 21 of the '852 patents.  (Dkt. 104-1 at 14–15.)  The Court agrees.

Where, as here, the asserted claims are "substantially similar to the invalidated claims[,]" further limitations that narrow the claim scope will not preclude the application of collateral estoppel unless the additional limitation somehow "change[s] the invalidity analysis." *Ohio Willow Wood*, 735 F.3d at 1342 (finding collateral estoppel where the patentee failed to explain how the specific limitation of a "block copolymer gel" in the unadjudicated claim would change the invalidity analysis of a

substantially identical claim requiring a more general "polymeric gel");
*see also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*,
LLC, 778 F.3d 1311, 1319 (Fed. Cir. 2015) (finding collateral estoppel
where the unadjudicated claim specified "transmitting a hypertext
statement over the Internet, rather than over a generic network."). In
both *Ohio Willow Wood* and *Soverain*, the broader claim had already been
found invalid as obvious, and the patentee failed to demonstrate that
narrowing the claim further in the unadjudicated claims would have any
impact on that finding. So too here. Resh hardly makes any argument
at all regarding the '554 patent, much less any argument regarding the
materiality of the differences between the claims of that patent and those
of the '852 patent. (*See* Dkt. 109.)

In any event, adding a single limitation to claims 1, 2, and 26 of the
'554 patent that is substantially similar to one already found to be
obvious in *Skimlite* does not materially alter the question of validity.
Claim 19 of the '852 patent was invalid as obvious in large part because
the court found a POSA would have recognized that it was desirable to
make a telescoping pole from a lightweight material, such as aluminum;
the '554 claims are no less obvious just because they specifically

enumerate that the telescoping pole should also be made of that material. Moreover, the Court need look no further than the text of the patent itself for further support of its conclusion that the additional limitation in claims 1, 2, and 26 of the '554 patent merely states the obvious. In the Background of the Invention section, discussing prior art, the patent states that "[t]ypically, telepole tubing is made from aluminum, fiber glass, or some other light, yet relatively strong material." (Dkt. 104-8 at 26.) The Background of the Invention section of the '852 patent contains this same language. (Dkt. 104-7 at 22.)

Ultimately, the '554 claims do not add any patentably significant limitations to the invalid '852 claims. The only real difference is that claims 1, 2, and 26 of the '554 more explicitly state what the invalidated '852 claims seem to have assumed. However, "the mere use of different words in these portions of the claims does not create a new issue of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342.

Resh is collaterally estopped from asserting claims 1-3, 6-8, 11, 16, 18-19, 26-27, and 29 of the '554 patent as those claims—like their counterparts in the '852 patent—are invalid as obvious.

29

## 2.    Claim 21

Aqua EZ contends claim 21 of the '554 patent mirrors invalidated claim 24 of the '852 patent and that the differences between the two do not "materially alter the question of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342. The California court invalidated claim 24 of the '852 patent as obvious. (Dkt. 104-4 at 36.) As shown below, claim 21 of the '554 patent contains a single limitation, and that limitation is similar to one of the two limitations in claim 24 of the '852 patent.

| **'852 Patent** | **'554 Patent** |
|---|---|
| **Claim 24**<br>The telepole of claim 21, wherein said **inner tube element has a cross-section that is generally round with at least one flat side**, and said collar is keyed to engage said at least one flat side and thereby prevent rotation of said inner and outer tubes relative to each other. | **Claim 21**<br>The apparatus of claim 1 or claim 2 or claim 20, in which **the cross section of the inner tube is more round-shaped than a hexagon**. |

(Dkt. 104-9 at 5.)

Having already found claims 1 and 2 of the '554 patent obvious, the Court must consider whether the addition of the limitation—"in which the cross-section of the inner tube is more round-shaped than a

hexagon"—affects that invalidity determination.[11]  Aqua EZ reasons that because claim 24 of the '852 patent contains a similar cross-section limitation that is invalid as obvious, the addition of the cross-section limitation to claim 21 does not save it from a finding of obviousness.  (Dkt. 104-1 at 18.)  Because Aqua EZ fails to explain how the differences between the cross-section limitations are immaterial, the Court disagrees.

Aqua EZ does not carry its initial burden at summary judgment because it simply assumes what it sets out to prove—that the differences between the cross-section limitations are not "patentably significant."  Aqua EZ concludes "[a] cross section that is 'generally round with at least one flat side' is substantially similar to a cross section that is 'more round shaped than a hexagon,'" but offers no explanation as to why that is the case.  (Dkt. 104-1 at 22.)  Granted, the cross-section limitations share similarities: both limitations envision an inner tube within a telepole apparatus that is somewhat round but may also include one or more flat sides.  But the similarities stop there.  For example, the plain terms of

---

[11] As explained, Resh does not assert claim 20 of the '554 patent in this case.

claim 21 of the '554 patent allow for a circular, ovular, or elliptical inner tube—because such a shape is "more round-shaped than a hexagon"—while such a tube would fall outside the cross-section limitation of claim 24 of the '852 patent because it does not include "at least one flat side." By that same logic, the cross-section limitation of claim 21 would also encompass polygons such as an octagon, decagon, or dodecagon—as those are more "round" than a hexagon—while claim 24 may not permit these shapes because they may not be "generally round." Further, claim 21's reference to a hexagon as a point of comparison may have functional significance for the telepole, or it may simply be an arbitrary shorthand for describing the desired shape. Without any explanation from Aqua EZ comparing the limitations beyond pure linguistic similarity, the Court cannot know. Finally, if the cross-section limitation in claim 21 of the '554 patent were "substantially similar" to that of claim 24 of the '852 patent, it would render claim 22 of the '554 patent redundant, as claim 22 contains language nearly identical to the cross-section limitation in claim 24 of the '852 patent. This redundancy suggests that claim 21 differs from those claims in some material respect.

While it is entirely possible these differences are of no consequence, they could also be material and "alter the invalidity determination." *See Ohio Willow Wood*, 735 F.3d at 1342. Even though Resh did not respond to this argument, Aqua EZ must do more than offer a cursory comparison between the adjudicated '852 claim and the unadjudicated claim it seeks to bar through collateral estoppel. The *Ohio Willow Wood* analysis is part of the "identical issue" element of collateral estoppel and, thus, falls on Aqua EZ's to establish. *See RF Delaware*, 326 F.3d at 1261 ("The party seeking to invoke collateral estoppel bears the burden to prove all necessary elements"). Moreover, as the summary judgment movant, Aqua EZ bears the initial burden of showing the absence of a genuine dispute of material fact. *See Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). And while obviousness is a question of law, it is "based on underlying facts." *Ohio Willow Wood*, 735 F.3d at 1343. But aside from the claim language itself and the *Skimlite* order, Aqua EZ has not identified any facts supporting a finding that the cross-section limitation of claim 21 of the '554 patent is obvious.

Collateral estoppel does not preclude Resh from asserting claim 21 of the '554 patent against Aqua EZ.

### 3. Claim 22

Aqua EZ also seeks to collaterally estop Resh from asserting claim 22 of the '554 patent based on the California court's invalidation of claim 24 of the '852 patent. (Dkt. 104-1 at 15.) Claim 22 is dependent of claims 1 and 2 of the '554 patent—which the Court invalidated above—and contains a single limitation that is nearly identical to the cross-section limitation in claim 24 of the '852 patent. The table below shows just how similar the limitations are with differences in bold:

| **'852 Patent** | **'554 Patent** |
|---|---|
| **Claim 24**<br>The telepole of claim 21, wherein said **inner tube element has a cross-section that is generally round with at least one flat side**, and said collar is keyed to engage said at least one flat side and thereby prevent rotation of said inner and outer tubes relative to each other. | **Claim 22**<br>The apparatus of claim 1 or claim 2 or claim 20, in which **the cross section of the inner tube is generally round with at least one generally flat portion**. |

(Dkt. 104-9 at 5.) Aqua EZ contends that because the *Skimlite* order found the cross-section limitation in claim 24 common in prior art and, thus, invalid as obvious, the same must be true of a near-identical limitation in claim 22. (*Id.*; Dkt. 104-4 at 28.) The Court agrees.

There is almost no difference, much less a material one, between the cross-section limitations in claim 24 of the '852 patent and claim 22 of the '554 patent.  Claim 22 of the '554 patent is dependent of independent claims describing a "telescoping pole apparatus" containing both an "inner tube" and "outer tube;" similarly, claim 24 of the '852 patent is dependent of an independent claim describing "a telepole device" comprised of "an outer tube element" and "inner tube element." (Dkt. 104-9 at 1–4.)  Both claims add a limitation calling for the cross-section of that inner tube to be "generally round" with at least one "flat side" or "generally flat portion."  (*Id*.)  If the *Skimlite* order found this cross-section limitation obvious in a "telepole device," it follows that it would also be obvious to include that exact limitation in a "telescoping pole apparatus."  (*See* Dkt. 104-4 at 28.)  Indeed, the '554 patent describes a "telepole" as a pole with an "extendable handle"—in other words, a pole apparatus with the ability to telescope.  (Dkt. 104-8 at 26.)

Ultimately, the only difference between claim 22 of the '554 patent and claim 24 of the '852 patent is that the latter contains an additional limitation ("and said collar is keyed to engage said at least one flat side and thereby prevent rotation of said inner and outer tubes relative to

each other"). However, that claim 22 does not contain that requirement causes this claim to be broader and even more susceptible to a finding of obviousness. *See Speedfit LLC v. Chapco Inc.*, 490 F. Supp. 3d 575, 590 (E.D.N.Y. 2020) ("[T]he absence of a claim limitation only "cause[s] the claim to be broader, and thus even more susceptible to disclosure by the prior art."); *see also Orenshteyn v. Int'l Bus. Machs., Corp.*, 979 F. Supp. 2d 448, 452 (S.D.N.Y. 2013) (applying collateral estoppel and finding that the unadjudicated patent claim was not distinct from the invalidated patent claim, where the only substantive changes in the unadjudicated claim were "to delete various requirements" present in the adjudicated claim). Put differently, the removal of the "collar" limitation in claim 22 is not a material change that would "alter the question of invalidity." *See Ohio Willow Wood*, 735 F.3d at 1342.

Although Aqua EZ's argument regarding claim 22 of the '554 patent—like its argument as to claim 21—relies only on the *Skimlite* order and the claim language to support a finding of obviousness, it has nevertheless done enough to carry its burden as to claim 22. Because the cross-section limitation of claim 21 of the '554 patent is substantively different than the cross-section limitation of claim 24 of the '852 patent

on its face, Aqua EZ needed to provide some evidence (other than the *Skimlite* order and claim language) explaining why the "differences in claim scope [do not] preclude summary judgment." *See id.* The cross-section limitation of claim 22, on the other hand, is almost identical to that of claim 24 of the '852 patent—"generally round with at least one generally flat portion" versus "generally round with at least one flat side." So this is not a situation in which Aqua EZ needed to "explain[] how [the] alleged differences in claim scope alter the invalidity determination." *See id.* Instead, this is a case of "patents us[ing] slightly different language to describe substantially the same [feature]," and, as is clear from *Ohio Willow Wood*, "the mere use of different words in these portions of the claims does not create a new issue of invalidity." *See id.* at 1343. So there is no material difference that Aqua EZ must address to meet its initial burden, particularly when Resh does not respond to this argument.

In sum, claim 22 of the '554 patent is not distinct from invalid claim 24 of the '852 patent in any way that raises an issue of material fact as to its validity. It is thus invalid as obvious as well, and Resh is collaterally estopped from asserting claim 22 of the '554 patent in this litigation.

### 4.    Claims 31 and 32

Aqua EZ contends the California court's invalidation of claims 2, 3, and 21 of the '852 patent collaterally estops Resh from asserting claims 31 and 32 of the '554 patent.  Claim 3 of the '852 patent is dependent of claim 2—which the *Skimlite* order invalidated for obviousness—but adds the following "V-clip" limitation:

> The apparatus of claim 2, further including a swimming pool cleaning tool attached to said second end of said outer tube using at least one V-clip that can be inserted into two holes positioned opposite each other near the end of said outside tube.

(Dkt. 104-7 at 30.)  The '852 patent describes V-clips as "springy plastic" components with "button-like ends that extend outwardly" through a set of holes in the "outer tube" of the "telescoping pole apparatus" described in claim 2.  (*Id.* at 22.)  The purpose of the V-clips is to permit the "easy attachment and removal of pool cleaning tools such as leaf nets, brushes, vacuum head, and the like."  (*Id.*)  The *Skimlite* order invalidated claim 3 of the '852 patent because it found the use of V-clips on a telescoping pole for "removably attaching" tools to be obvious.  (Dkt. 104-4 at 26 ("[I]t is undisputed that V-clips are not new.  And Defendants have shown by clear and convincing evidence that it would have been obvious to modify

[prior telescoping pole art] to include [a] structure for removably attaching a tool.").)

Claim 31 of the '554 patent contains the exact same language as invalidated claim 2 of the '852 patent but adds a "V-clip" limitation. (Dkt. 104-9 at 6–7.)  Although worded differently than the V-clip limitation in claim 3 of the '852 patent, Aqua EZ contends claim 31's V-clip limitation is simply an "excessively wordy, unnecessarily detailed" version of that limitation and is materially and functionally the same.  (Dkt. 104-1 at 25.)  Claim 32 of the '554 patent contains the exact same language as invalidated claim 21 of the '852 patent but also adds the same allegedly "excessively wordy, unnecessarily detailed" V-clip limitation seen in claim 31.  The chart below compares claims 2, 3, and 21 of the '852 patent with claims 31 and 32 of the '554 patent, highlighting the V-clip limitations in bold:

| **'852 Patent** | **'554 Patent** |
|---|---|
| **Claim 2**<br>A telescoping pole apparatus, including: an outer tube having first and second ends, said first end of the outer tube having a collar associated therewith, said collar containing a selectively actuatable detent, said second end of said outer tube having structure for removably attaching a tool; an inner tube having first and second ends, said first end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate the apparatus, said second end of said inner tube being slidably received in the first end of the outer tube through an opening in said collar, said inner tube having a plurality of detent holes positioned to be engaged with said actuatable detent, said inner tube being a single wall tube that is hollow along at least substantially its length between said first and second ends of said inner tube and said inner tube configured to slide within said outer tube to a selectable position relative to the outer tube at which position said detent is configured to temporarily engage and hold said inner tube. | **Claim 31**<br>A telescoping pole apparatus, including: an outer tube having first and second ends, said first end of the outer tube having a collar associated therewith, said collar containing a selectively actuatable detent, said second end of said outer tube having structure for removably attaching a tool; an inner tube having first and second ends, said first end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate the apparatus, said second end of said inner tube being slidably received in the first end of the outer tube through an opening in said collar, said inner tube having a plurality of detent holes positioned to be engaged with said actuatable detent, said inner tube being a single wall tube that is hollow along at least substantially its length between said first and second ends of said inner tube and said inner tube configured to slide within said outer tube to a selectable position relative to the outer tube at which position said detent is configured to temporarily engage and hold said inner tube; |
| **Claim 3**<br>**The apparatus of claim 2, further including a swimming pool cleaning tool attached to said second end of** | **[A] Said structure for removably attaching a tool including a sidewall integrally formed as part of said second end of said outer tube, [B]** |

| | |
|---|---|
| **said outer tube using at least one V-clip that can be inserted into two holes positioned opposite each other near the end of said outside tube.** | **said sidewall including at least one pair of enclosed perforations through said sidewall and spaced radially from a longitudinal central axis of said outer tube, [C] a first perforation of said at least one pair being spaced radially on one side of said longitudinal axis and the other perforation of the at least one pair being radially spaced on the other side of said longitudinal axis, [D] said at least one pair of perforations sized and positioned to receive corresponding protruding elements on a flexible V-clip attaching structure in the tool, to thereby engage the tool with said outside tube.** |
| **Claim 21**<br>An improved telepole device, comprising: an outer tube element having first and second ends, said first end of the outer tube element having a collar element associated therewith, said collar element containing a detent means, said second end of the outer tube having attachment means for removably attaching a tool; an inner tube element having first and second ends; said second end of said inner tube element being received in the first end of the outer tube through an opening in said collar element; wherein said inner tube element is configured to readily slide within said outer tube element to a selected position along the length of the | **Claim 32**<br>An improved telepole device, comprising: an outer tube element having first and second ends, said first end of the outer tube element having a collar element associated therewith, said collar element containing a detent means, said second end of the outer tube having attachment means for removably attaching a tool; an inner tube element having first and second ends; said second end of said inner tube element being received in the first end of the outer tube through an opening in said collar element; wherein said inner tube element is configured to readily slide within said outer tube element to a selected position along the length of the |

| | |
|---|---|
| outer tube, and wherein said detent means is configured to temporarily lock the inner tube in that selected position within the outer tube. | outer tube, and wherein said detent means is configured to temporarily lock the inner tube in that selected position within the outer tube; |
| **Claim 3**<br>**The apparatus of claim 2, further including a swimming pool cleaning tool attached to said second end of said outer tube using at least one V-clip that can be inserted into two holes positioned opposite each other near the end of said outside tube.** | **[A] Said structure for removably attaching a tool including a sidewall integrally formed as part of said second end of said outer tube, [B] said sidewall including at least one pair of enclosed perforations through said sidewall and spaced radially from a longitudinal central axis of said outer tube, [C] a first perforation of said at least one pair being spaced radially on one side of said longitudinal axis and the other perforation of the at least one pair being radially spaced on the other side of said longitudinal axis, [D] said at least one pair of perforations sized and positioned to receive corresponding protruding elements on a flexible V-clip attaching structure in the tool, to thereby engage the tool with said outside tube.** |

(Dkt. 104-9 at 6–9.)

Aqua EZ's argument proceeds in two parts: (1) the differences between the V-clip limitation in claims 31 and 32 of the '554 patent and that of claim 3 of the '852 patent are immaterial and the limitation is therefore obvious as well, and (2) because claims 31 and 32 of the '554

patent merely append an obvious limitation to already-invalidated claims, that addition is not enough to "create a new issue of invalidity." (Dkt. 104-1 at 27–28 (citing *Ohio Willow Wood*, 735 F.3d at 1342–43).) Thus, Aqua EZ reasons, claims 31 and 32 of the '554 patent are invalid as obvious via collateral estoppel. Resh, again, does not respond to this argument. The Court concurs with Aqua EZ.

Though worded quite differently, the V-clip limitation of claim 3 of the '852 patent and that of claims 31 and 32 of the '554 patent describe a structure with the same four essential features. Claim 3's V-clip limitation envisions: (1) two holes (2) positioned opposite of each other (3) on the second end of the outer tube of a pool cleaning tool attached to a telescoping pole, (4) through which a V-clip can be inserted. The V-clip limitation in claims 31 and 32 of the '554 patent uses hyper-technical language but describes a materially similar structure.

| Element of V-clip limitation of Claim 3 of '852 Patent | Corresponding Element in V-clip Limitation of Claims 31 and 32 of the '554 Patent |
|---|---|
| 1.    Two holes | "[A]t least one pair of enclosed perforations…" |
| 2.    Positioned opposite each other | "[A] first perforation of said at least one pair being spaced radially on one side of said longitudinal axis and the other |

| | perforation of the at least one pair being radially spaced on the other side of said longitudinal axis" |
|---|---|
| 3.     On the second end of the outer tube of a pool cleaning tool attached to a telescoping pole | "[S]tructure for removably attaching a tool integrally formed as part of said second end of said outer tube" |
| 4.     Through which a V-clip can be inserted | "[A]t least one pair of perforations sized and positioned to receive corresponding protruding elements on a flexible V-clip attaching structure in the tool" |

(Dkt. 104-8 at 38.)    As shown above, a comparison of the two V-clip limitations demonstrates they simply use "different language to describe substantially the same [structure]." *See Ohio Willow Wood*, 735 F.3d at 1342.  But, once again, "the mere use of different words in these portions of the claims does not create a new issue of invalidity." *Id.*

If it was obvious to add the structure described in claim 3 of the '852 patent to the "telescoping pole apparatus" of claim 2 of the '852 patent— as the California court concluded—it follows that it is also obvious to add substantially the same structure to a "telescoping pole apparatus" identical to that of claim 2 of the '852 patent.  But that is precisely what claim 31 of the '554 patent does.  And if adding that V-clip structure to a "telescoping pole apparatus" is obvious, then it must also be obvious to

44

add it to a "telepole device" as well. But claim 32 of the of the '554 patent does that exactly, and the text of that patent confirms that a "telepole device" is by nature a "telescoping pole apparatus." As explained, the '554 patent describes a "telepole" as a pole with an "extendable handle"—in other words, a pole apparatus with the ability to telescope. (Dkt. 104-8 at 26.)

To summarize, the V-clip limitation in claims 31 and 32 of the '554 patent is materially similar to that of claim 3 of the '852 patent and therefore is obvious as well. *See Ohio Willow Wood*, 735 F.3d at 1342. If that limitation is obvious, it cannot be combined with claims already invalidated as obvious to "create a new issue of invalidity." *See id.* Thus, claims 31 and 32 of the '554 patent are invalid as obvious by means of collateral estoppel.

## IV.  Conclusion

Aqua EZ's Motion for Partial Summary Judgment Based on Issue Preclusion (Dkt. 104) is **GRANTED IN PART** and **DENIED IN PART**. Resh is collaterally estopped from asserting '852 patent claims 1-3, 6-8, 11, 16, 18-19, 21-22, and 24; and '554 patent claims 1-3, 6-8, 11, 16, 18-19, 22, 26-27, and 31-32. The Court denies summary judgment as to

claim 21 of the '554 patent.  That claim remains in the case, along with claim 17 of the '852 patent and claims 24 and 25 of the '554 patent.[12]  The Court **DENIES** Defendant Resh, Inc.'s renewed Motion to Stay (Dkt. 105).

      **SO ORDERED** this 4th day of March, 2026.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[12] Each of those claims involve a "thickened wall portion" limitation. None of the claims in *Skimlite* involved that limitation, so Aqua EZ did not move for summary judgment on those claims.  (Dkt. 104-1 at n. 2.)